### Commonwealth vs. Jason Loadholt.

Hampden. September 6, 2011. - October 11, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Firearms. Constitutional Law,* Right to bear arms. *Statute,* Validity.

This court concluded that where a criminal defendant never asserted or made any showing that he applied for (and was denied) a firearm identification card to possess a firearm and ammunition, he could not later argue that his prosecution for possession of a firearm and ammunition, in violation of G. L. c. 269, § 10(*h*)(1), violated his right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution [724-725]; further, the requirement of prior approval by a government officer, or a licensing system, did not render the statute unconstitutional on its face [725-727].

Indictments found and returned in the Superior Court Department on June 1, 2006.

A pretrial motion to suppress evidence was heard by *Constance M. Sweeney,* J., and the cases were tried before her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard B. Klibaner* for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

Ireland, C.J. This case is before us pursuant to an order entered by the United States Supreme Court granting the defendant's petition for certiorari, vacating the judgment, and remanding the case to us for further consideration in light of *McDonald* v. *Chicago,* 130 S. Ct. 3020 (2010) (*McDonald*). *Commonwealth* v. *Loadholt,* 456 Mass. 411, vacated and remanded, 131 S. Ct. 459 (2010). In *McDonald,* the Supreme Court, departing from past precedent, see *United States* v. *Cruikshank,* 92 U.S. 542, 553 (1875), concluded that the right to keep and bear arms under the Second Amendment to the United States Constitution

"applies equally to the Federal Government and the States." *McDonald, supra* at 3050. In our previous decision, *Commonwealth* v. *Loadholt, supra* at 413, 429, we did not address the defendant's argument that his prosecution for possession of a firearm and ammunition without a firearm identification card (FID card), in violation of G. L. c. 269, § 10 (*h*) (1),[1] violated his right to keep and bear arms as guaranteed by the Second Amendment, because we concluded that the Second Amendment did not apply to the States.[2] Thus, the only issue we must decide on remand is whether the *McDonald* decision requires us to dismiss the three indictments charging the defendant under G. L. c. 269, § 10 (*h*) (1), with possession of a firearm and ammunition without an FID card.[3]

The defendant argues that the requirement of "prior approval by a government officer" before one may possess ammunition

---

[1]General Laws c. 269, § 10 (*h*) (1), makes it an offense to own or to possess a firearm or ammunition in one's home or place of business without obtaining a firearm identification card (FID card) pursuant to G. L. c. 140, § 129C.

[2]The background of the case appears in *Commonwealth* v. *Loadholt*, 456 Mass. 411, 412-413, vacated and remanded, 131 S. Ct. 459 (2010). As relevant here, the defendant was indicted on, among other charges, three charges of possession of a firearm or ammunition without an FID card, G. L. c. 269, § 10 (*h*), after having been convicted previously of two violent crimes, G. L. c. 269, § 10G (*b*). *Commonwealth* v. *Loadholt, supra* at 412. The trial was bifurcated, such that the portions of the first three indictments that related to the defendant's prior violent crime convictions (the enhanced sentence portions) were not initially submitted to the jury. *Id.* The jury found the defendant guilty on each indictment. *Id.* at 413. The defendant then waived his right to a jury trial on the enhanced sentence portions of the first three indictments and pleaded guilty to that portion of each indictment that alleged one prior violent crime. *Id.*

[3]In his supplemental brief, the defendant confines his argument to the two charges relating to possession of ammunition without an FID card, presumably because we reversed his conviction of possession of a firearm without an FID card. Although we reversed the defendant's conviction under G. L. c. 269, § 10 (*h*) (1), of possession of a firearm without an FID card (because we concluded that the Commonwealth did not show that the erroneous admission of a certificate of ballistic analysis and related letter, which were used to prove that the weapon seized satisfied the legal definition of a firearm, was harmless beyond a reasonable doubt), we did not dismiss that indictment, see *Commonwealth* v. *Loadholt, supra* at 430-435, which means that he may be retried on that indictment, see *id.* at 434. Consequently, we consider the defendant's arguments with respect to his convictions under G. L. c. 269, § 10 (*h*) (1), of both possession of ammunition *and* of a firearm without an FID card.

(or a firearm)[4] violates the Second Amendment. In *Commonwealth* v. *Powell*, 459 Mass. 572, 583, 589 (2011), the defendant advanced a Second Amendment challenge to G. L. c. 269, § 10 (*h*) (1), under which he was charged with unlawful possession of a firearm without obtaining an FID card. We pointed out that the defendant did not contend "that he ever attempted to obtain an FID card" and therefore did not demonstrate "that a denial of the issuance of an FID card would have been rendered." *Id.* at 589. We also noted that, "[h]ad he been denied an FID card, his recourse [was] set forth in G. L. c. 140, § 129B (5) ('Any applicant . . . aggrieved by a denial . . . of [an FID card] . . . may . . . [ninety] days after receipt of notice of such denial . . . file a petition to obtain judicial review in the district court having jurisdiction in the city or town wherein the applicant filed for . . . such card')." *Id.* In these circumstances, we concluded that the defendant could not challenge his conviction under G. L. c. 269, § 10 (*h*) (1). *Id.* at 589-590. Similarly, because the defendant in this case has not asserted or made any showing that he applied for (and was denied) an FID card to possess a firearm and ammunition, we conclude that he may not challenge his convictions under G. L. c. 269, § 10 (*h*) (1), as unconstitutional under the Second Amendment. See *id.* at 590. See also *Commonwealth* v. *Wallace, ante* 118, 122-123 (2011).

The defendant contends that his facial challenge to G. L. c. 269, § 10 (*h*) (1), obviates the requirement that he had applied for and had been denied a FID card. "[I]n a prosecution for violation of a licensing statute which is unconstitutional on its face, the issue of its validity is presented even in the absence of an application for a license." *Commonwealth* v. *Gordon*, 354 Mass. 722, 725 (1968).[5] Here, the defendant contends that the statute is facially unconstitutional because it requires "prior

---

[4]As explained in note 3, *supra*, we consider the defendant's arguments not only with respect to the charges of possession of ammunition without an FID card, but also with respect to the charge of possession of a firearm without an FID card.

[5]We underscore that this principle applies only in circumstances in which there is a statute that is facially unconstitutional. *Commonwealth* v. *Gordon*, 354 Mass. 722, 725 (1968). The general rule is that "[o]nly one whose rights are impaired by a statute can raise the question of its constitutionality, and he

approval by a government officer" before one may possess a firearm or ammunition. Said another way, the defendant asserts that the Second Amendment bars any licensing system. The Court's decisions of *McDonald* and *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) (*Heller*), however, do not support such a conclusion. To the contrary, the Court in *Heller* identified an individual right to carry and bear arms that is limited in scope. The Court explained that a citizen's Second Amendment right did not prohibit laws regulating who may possess and carry weapons or purchase them, or where such weapons may be carried. The Court stated:

> "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sales of arms."[6]

*Heller, supra* at 626-627. In *McDonald*, the Court cited to this specific language in *Heller* and stated: "We repeat those assurances here. Despite . . . doomsday proclamations, incorporation does not imperil every law regulating firearms." *McDonald, supra* at 3047. Thus, the requirement of "prior approval by a government officer," or a licensing system, does not by itself render the statute unconstitutional on its face.[7]

We do not address the defendant's claims that center around

can object to the statute only as applied to him." *Id.*, quoting *Massachusetts Comm'n Against Discrimination* v. *Colangelo*, 344 Mass. 387, 390 (1962). To hold otherwise would permit a defendant, essentially, "to vindicate the constitutional rights of some third party." *Blixt* v. *Blixt*, 437 Mass. 649, 661 (2002), quoting *Slama* v. *Attorney Gen.*, 384 Mass. 620, 624 (1981).

[6]The United States Supreme Court noted: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *District of Columbia* v. *Heller*, 554 U.S. 570, 627 n.26 (2008).

[7]The decision of the defendant not to assert an as-applied challenge in this case does not escape us. During oral argument, the Commonwealth pointed out that because the defendant is a felon, had he attempted to apply for an FID card, his criminal history would have disqualified him. Because the Court has expressly approved of this type of disqualification, an as-applied challenge in these circumstances would not be successful. See *Heller, supra* at

his contention that, in light of the *McDonald* and *Heller*, G. L. c. 278, § 7,[8] creates an unconstitutional presumption, the application of which in his case violated his Federal due process rights. The defendant did not raise these arguments at trial or in his original brief on direct appeal. Nothing in the *McDonald* and *Heller* decisions has altered or abrogated the state of the law concerning the statutory presumption set forth in G. L. c. 278, § 7.[9] See *Commonwealth* v. *Powell*, *supra* at 582, and cases cited. Therefore, the futility exception to the doctrine of waiver, see *Commonwealth* v. *Vasquez*, 456 Mass. 350, 357-358 (2010), does not apply.

There is no reason to alter our conclusion set forth in *Commonwealth* v. *Loadholt*, *supra* at 434-435, pertaining to the defendant's convictions under G. L. c. 269, § 10 (*h*) (1), and this conclusion is to be reinstated.

*So ordered.*

626-627 ("Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . .").

[8]General Laws c. 278, § 7, provides that a "defendant in a criminal prosecution, relying for his justification upon a license . . . shall prove the same; and, until so proved, the presumption shall be that he is not so authorized."

[9]The unpublished decision in Gonzalez *vs.* Dickhaut, Civil Action No. 08-11657 (D. Mass. Nov. 30, 2010), is inapposite. In that case, the defendant was being charged as a joint venturer. The court concluded that, under Federal due process principles, subjecting the defendant to "the extraordinarily burdensome task of investigating whether any of [the statutory exemptions from the firearm identification card requirement] applied to the joint venturer who possessed the gun" would be unfair.