## Commonwealth vs. Chevall Johnson.

Suffolk. October 4, 2011. - December 2, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Firearms. Practice, Criminal,* Motion to suppress, Sentence, Duplicative convictions, Double jeopardy. *Constitutional Law,* Search and seizure, Probable cause, Double jeopardy, Right to bear arms. *Search and Seizure,* Automobile, Probable cause, Plain view. *Probable Cause. Motor Vehicle,* Operating under the influence. *Arrest. Rules of Appellate Procedure. Statute,* Validity. *License.*

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress a firearm, ammunition, and drugs discovered during a search of the defendant's automobile that was conducted when police officers, after having chased the defendant's vehicle for failing to stop at a red traffic light, and having observed an open bottle of alcohol in plain view after the defendant got out of the vehicle, arrested the defendant for operating a motor vehicle with a suspended license, where the police (regardless of the fact that the defendant was not arrested for operating under the influence) had probable cause to believe that the defendant had been operating a motor vehicle while under the influence of alcohol and that evidence pertaining to that crime could be found in the vehicle, and saw the firearm in plain view after having lawfully entered the vehicle. [48-51]

This court concluded that a criminal defendant's convictions of unlawful possession of ammunition and unlawful possession of a loaded firearm were duplicative, where, given that there was no evidence the defendant possessed any ammunition apart from that found loaded in the firearm, all of the required elements of unlawful possession of ammunition were encompassed by the elements of unlawful possession of a loaded firearm, such that the former crime was a lesser included offense of the latter crime; therefore, the defendant's separate sentences for each crime violated his double jeopardy rights, in that he was punished twice for possession of the same ammunition. [51-54]

This court declined to consider an issue that was not raised in a criminal defendant's brief filed in the Appeals Court, but was raised for the first time in a new brief filed after the case had been transferred to this court on the court's own motion, where, even though the defendant's motion to file a new brief in this court was improperly allowed, his new brief was limited to addressing the effect of new case law on the issues he already had raised in the Appeals Court. [54-56]

There was no merit to a criminal defendant's facial challenge to the constitutionality of the Commonwealth's statutory firearms licensing scheme. [56-59]

INDICTMENTS found and returned in the Superior Court Department on February 20, 2007.

A pretrial motion to suppress evidence was heard by *Charles J. Hely,* J., and the cases were tried before *Judith A. Fabricant,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Elizabeth Caddick* for the defendant.

*Janis DiLoreto Noble,* Assistant District Attorney, for the Commonwealth.

SPINA, J. On February 20, 2007, the defendant, Chevall Johnson, was indicted on charges of unlawful possession of a firearm under G. L. c. 269, § 10 (*a*); unlawful possession of ammunition under G. L. c. 269, § 10 (*h*); unlawful possession of a loaded firearm under G. L. c. 269, § 10 (*n*); resisting arrest under G. L. c. 268, § 32B; assault and battery on a police officer under G. L. c. 265, § 13D; operating a motor vehicle with a suspended license under G. L. c. 90, § 23; and being an armed career criminal under G. L. c. 269, § 10G. He filed a motion to suppress the firearm, ammunition, and marijuana seized from his vehicle, claiming that those items were obtained as the result of an unlawful search. After an evidentiary hearing, a judge in the Superior Court denied the motion, and the matter proceeded to trial in January, 2008. A jury found the defendant guilty of unlawful possession of a firearm, unlawful possession of ammunition, unlawful possession of a loaded firearm, resisting arrest, and operating a motor vehicle with a suspended license. He was found not guilty of assault and battery on a police officer. In a subsequent bench trial, the defendant was convicted of being an armed career criminal.

The defendant appealed, and we transferred the case to this court on our own motion. He now argues that (1) the judge erred in denying his motion to suppress; (2) his conviction of unlawful possession of ammunition was duplicative of his conviction of unlawful possession of a loaded firearm; and (3) his firearm convictions violated his right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution. For the reasons that follow, we affirm in part and vacate in part.

1. *Background.* We summarize the motion judge's findings,

supplemented with uncontested testimony from the suppression hearing. See *Commonwealth* v. *Gomes*, 453 Mass. 506, 507 (2009). We save for later discussion additional facts presented at trial that are pertinent to the defendant's trial-related claims.

On December 3, 2006, at approximately 5:30 P.M., Officer Patrick Rose of the Boston police department, and his partner, Officer Charles Kelly, were in plain clothes and sitting in an unmarked vehicle at a red light near the intersection of East Cottage Street and Dorchester Avenue in the Dorchester section of Boston. They observed a Cadillac Escalade sport utility vehicle (SUV) "blow[] through the red light" in front of them and continue along Dorchester Avenue. Officer Rose pulled his vehicle behind the SUV, checked its registration plate number on his computer, and learned that the SUV was registered to the defendant. Officer Rose activated his blue lights, but the SUV did not stop. Instead, the operator made several turns before finally parking in a legal space across from 8 or 10 Auckland Street, approximately twenty seconds after the police pursuit had begun. The operator got out of the vehicle, shut the door, and started to walk away.

Officer Rose maneuvered his vehicle in front of the operator. Officer Rose and Officer Kelly got out, identified themselves, and approached the operator. He "reeked" of alcohol, was slurring his words, was unsteady on his feet, and was agitated. Officer Rose believed that the operator was under the influence of alcohol. The officer asked him for his license and registration. The operator responded that he did not have his wallet, that the vehicle belonged to his deceased twin brother, and that he was only trying to get to his nearby home. The operator told Officer Rose that his name was "Jacques Johnson," and he provided a date of birth. This date of birth did not match the date of birth of the vehicle's registered owner based on the information that Officer Rose had received from the registry of motor vehicles. He then called for backup.

After further questioning, Officer Kelly told the operator that he was going to conduct a patfrisk. In the back pocket of the operator's pants, Officer Kelly discovered a wallet containing a Massachusetts driver's license in the name of "Chevall Johnson." The operator acknowledged that the wallet and the license

belonged to him. He also admitted that his license had been suspended, a fact that Officer Rose confirmed on his computer. At some point during his conversation with the defendant, Rose observed that there was a half-empty bottle of cognac on the dashboard of the SUV.[1]

Officer Rose decided to arrest the defendant for operating a motor vehicle with a suspended license. Officer Rose informed the other officers who had arrived on the scene that, "he's going," and signaled that the defendant should be handcuffed. One of the officers asked the defendant whether he had anything in his SUV.[2] The defendant responded by throwing his car keys at Officer Robert Charbonnier and saying, "I don't care, search, whatever." Officer Stephen Doran made his way around to the driver's side door of the SUV, opened it, and then yelled, "gun."[3] At that moment, the defendant pushed Officer Charbonnier and began to run down the street. After chasing the defendant for approximately one block, officers tackled him, subdued him with pepper spray, and placed him in handcuffs. Officer Doran recovered a loaded Smith and Wesson revolver from the open map pocket in the driver's side door. Also recovered from the SUV were the bottle of cognac and some marijuana.

In his written findings, the motion judge stated that he believed and adopted as part of his findings the testimony of Officer Rose.[4] The judge opined that when the officers saw the defendant drive his SUV through a red light, they had a lawful basis for stopping the vehicle. Further, the judge continued, when the defendant did not pull over his SUV in response to the blue

---

[1]In his findings, the motion judge stated that the bottle of cognac was on the front seat of the vehicle. However, Officer Rose testified that the bottle was on the dashboard. Either way, it was visible from outside the vehicle. Although the defendant was not cited for operating a motor vehicle while under the influence of intoxicating liquor, Officer Rose's observation of the bottle of cognac was critical to a finding of probable cause to search the defendant's motor vehicle, as discussed infra.

[2]Officer Rose intended to have the defendant's vehicle towed and an inventory search conducted.

[3]The motion judge did not make a specific finding that Officer Doran opened the driver's side door of the SUV before he observed the gun, but there was no testimony at the suppression hearing that any officer saw the gun while standing outside the vehicle.

[4]Officer Rose was the only witness who testified at the suppression hearing.

lights, and then walked away from the officers once he had
parked his vehicle on Auckland Street, the officers had probable
cause to arrest the defendant for his failure to stop. The fact that
the defendant's license had been suspended was an additional
arrestable offense. Finally, the judge stated that the search of the
defendant's SUV was lawful because, among other reasons, the
officers had probable cause to arrest the defendant for operating
a motor vehicle while under the influence of intoxicating liquor
(OUI).

2. *Motion to suppress evidence seized from vehicle.* When
reviewing the denial of a motion to suppress, we accept the
judge's findings of fact and will not disturb them absent clear
error. See *Commonwealth* v. *Gomes*, 453 Mass. 506, 508-509
(2009); *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978),
and cases cited. We make an independent determination as to
the correctness of the judge's application of constitutional prin-
ciples to the facts as found. See *Commonwealth* v. *Mercado*,
422 Mass. 367, 369 (1996). Questions of credibility are the
province of the motion judge who had the opportunity to observe
the witnesses. See *Commonwealth* v. *Martin*, 447 Mass. 274,
280 (2006). Our review here is based on the facts as developed
at the suppression hearing, not at trial. See *Commonwealth* v.
*Grandison*, 433 Mass. 135, 137 (2001).

The defendant contends that the warrantless search of his ve-
hicle was unlawful. As a consequence, he continues, the firearm
and ammunition found therein were seized illegally and,
therefore, must be suppressed.[5] We disagree.

A warrantless search is presumptively unreasonable under
both the Fourth Amendment to the United States Constitution
and art. 14 of the Massachusetts Declaration of Rights, unless it
falls within one of the "few specifically established and well-
delineated exceptions" to the warrant requirement. *Coolidge* v.
*New Hampshire*, 403 U.S. 443, 455 (1971), quoting *Katz* v.
*United States*, 389 U.S. 347, 357 (1967). See *Commonwealth* v.
*Cast*, 407 Mass. 891, 901 (1990). The burden is on the Com-
monwealth to show that a particular search falls within one of
these permissible exceptions. See *Commonwealth* v. *Antobene-*

---

[5]The defendant was not charged with any offense pertaining to the seizure
of marijuana found in his vehicle.

*detto,* 366 Mass. 51, 57 (1974). See also *Commonwealth* v. *Franklin,* 376 Mass. 885, 898 (1978). Under the automobile exception to the warrant requirement, the search of a motor vehicle is reasonable and permissible where probable cause exists to support the search.[6] See *Commonwealth* v. *Antobenedetto, supra* at 53. See also *Carroll* v. *United States,* 267 U.S. 132, 149 (1925). "[W]hen an automobile is stopped in a public place with probable cause, no more exigent circumstances are required by art. 14 beyond the inherent mobility of an automobile itself to justify a warrantless search of the vehicle." *Commonwealth* v. *Motta,* 424 Mass. 117, 124 (1997). See *Commonwealth* v. *Eggleston,* 453 Mass. 554, 557 (2009). See also *Pennsylvania* v. *Labron,* 518 U.S. 938, 940 (1996) (Fourth Amendment permits warrantless search of automobile on probable cause and without need for exigency). See generally J.A. Grasso & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 14-2[a] and [b], at 14-19—14-24 (2011-2012).

Because the right to search an automobile without a warrant "is independent of any right to arrest, . . . the occurrence of such an arrest makes little difference in determining the legitimacy of the search" (citations omitted). *Commonwealth* v. *Antobenedetto, supra* at 54. See *Carroll* v. *United States, supra* at 158-159; *Commonwealth* v. *Haefeli,* 361 Mass. 271, 276 (1972). The issue of paramount importance is whether the police, prior to the commencement of a warrantless search, had probable cause to believe that they would find "the instrumentality of a crime or evidence pertaining to a crime" in the vehicle. *Commonwealth* v. *Antobenedetto, supra* at 55, quoting *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U.S. 216, 221 (1968). See *Commonwealth* v. *Motta, supra* at 122-124 (warrantless search

---

[6]"The existence of probable cause depends on whether the facts and circumstances within the officer's knowledge at the time of making the search or seizure were sufficient to warrant a prudent [person] in believing that the defendant had committed, or was committing, an offense." *Commonwealth* v. *Bostock,* 450 Mass. 616, 624 (2008), quoting *Commonwealth* v. *Miller,* 366 Mass. 387, 391 (1974) (Hennessey, J., dissenting). "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Commonwealth* v. *Hason,* 387 Mass. 169, 174 (1982), quoting *Brinegar* v. *United States,* 338 U.S. 160, 175 (1949).

of automobile permissible where police have probable cause to believe crime has been or is being committed, and where fruits of crime or evidence related to crime might be found in vehicle); *Commonwealth* v. *Wunder*, 407 Mass. 909, 912 (1990) ("Probable cause to search the defendant's van for cocaine existed when the police possessed sufficient information to justify a reasonable person in believing that the defendant, found behind the wheel of that van, had committed or was committing the crime of trafficking in cocaine, and the circumstances were such that cocaine was probably present in that van").

Here, prior to the search of the defendant's SUV, Officer Rose had probable cause to believe that the defendant had been committing an OUI violation, and that he could find evidence pertaining to such crime in the motor vehicle. Officers Rose and Kelly had observed the defendant driving his SUV through a red light and then down several streets before finally parking the vehicle on Auckland Street. When the officers approached the defendant after he had left the SUV, they immediately noticed that the defendant "reeked" of alcohol, was slurring his words, was unsteady on his feet, and was agitated. He also provided the officers with false information as to his identity. See *Commonwealth* v. *Riggins*, 366 Mass. 81, 87-88 (1974) (providing implausible or false information to police, along with other facts, supports finding of probable cause to conduct warrantless search of automobile). As the officers were standing outside the SUV conversing with the defendant, they saw a half-empty bottle of cognac in plain view on the dashboard of the SUV.[7] There was ample probable cause to permit a search of the defendant's motor vehicle under the automobile exception to the warrant requirement. The fact that the defendant was not arrested for OUI does not affect the legitimacy of the search. See *Commonwealth* v. *Antobenedetto*, *supra* at 54-55. "The police are not required to make an arrest every time they have probable cause to believe someone has committed a crime." *Commonwealth* v. *Celestino*, 47 Mass. App. Ct. 916, 918 (1999). See *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 695 (1984) (probable cause to search not always congruent with probable cause to arrest).

---

[7]Although the issue was not raised below, possession of an open container of alcohol in a motor vehicle is a misdemeanor. See G. L. c. 90, § 24I.

Once Officer Doran lawfully entered the SUV, he saw the revolver in plain view in the open map pocket in the driver's side door. Under the Fourth Amendment, the plain view doctrine provides that "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995), quoting *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993). Article 14 adds the requirement that the police must have come across the item inadvertently. See *Commonwealth* v. *Balicki*, 436 Mass. 1, 9-10 (2002) ("inadvertence requirement means only that the police lacked probable cause to believe, prior to the search, that specific items would be discovered during the search"). See also *Commonwealth* v. *Sliech-Brodeur*, 457 Mass. 300, 307 (2010). We have stated that "[i]n the case of contraband and fruits and instrumentalities of crime, the nexus [of such items] to criminal activity is obvious." *Commonwealth* v. *D'Amour*, 428 Mass. 725, 731 (1999), citing *Commonwealth* v. *Accaputo*, 380 Mass. 435, 447 (1980). There has been no suggestion here that Officer Doran's observation of the revolver in the open map pocket, as he sought to recover the bottle of cognac, was anything other than inadvertent. Moreover, the incriminating character of the weapon, which was loaded, was immediately apparent and remained so until such time as the officers ascertained whether the defendant had a license to carry a firearm. We conclude that the seizure of the revolver was proper.[8]

3. *Duplicative convictions.* The defendant next contends that his conviction of unlawful possession of ammunition under G. L. c. 269, § 10 (*h*), was duplicative of his conviction of unlawful possession of a loaded firearm under G. L. c. 269, § 10 (*n*), and thus violated the double jeopardy clause of the Fifth Amendment to the United States Constitution because it

---

[8]In light of our resolution of this issue, we do not consider whether the officers lawfully impounded the defendant's vehicle and conducted an inventory search, whether the defendant freely and voluntarily consented to a search of his vehicle, or whether the search of the defendant's vehicle was lawful as a search incident to an arrest.

punished him twice for possession of the same ammunition.[9] Consequently, the defendant asserts that his conviction of the lesser included offense of unlawful possession of ammunition should be vacated.[10] We agree.

In *Commonwealth* v. *Vick*, 454 Mass. 418, 431-432 (2009), we affirmed the traditional elements-based approach to determining whether multiple convictions arising from one criminal transaction are duplicative, holding that "a defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof of an element that the other does not." *Id.* at 431, quoting *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002). "As long as each offense requires proof of an additional element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not [duplicative].' " *Commonwealth* v. *Vick, supra*, quoting *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981). In such circumstances, "multiple punishments are permitted even where the offenses arise from the very same criminal event." *Commonwealth* v. *Vick, supra* at 436. See *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871).

To convict the defendant of unlawful possession of a loaded firearm, the Commonwealth was required to prove that the defendant knowingly possessed a firearm that was loaded with ammunition and met the legal requirements of a firearm as

---

[9]On the conviction of unlawful possession of ammunition, the defendant was sentenced to two years in a house of correction, to be served concurrently with his sentence for unlawful possession of a firearm. As to his conviction of unlawful possession of a firearm, the defendant was sentenced to a term of incarceration of from seven years to seven years and one day in the Massachusetts Correctional Institution at Cedar Junction. On the conviction of unlawful possession of a loaded firearm, the defendant was sentenced to one year of probation, to run from and after the expiration of his sentence for unlawful possession of a firearm.

[10]Where the defendant neither raised the issue of duplicative convictions before the trial court nor filed a proper motion to revise or revoke the sentence under Mass. R. Crim. P. 29, 378 Mass. 899 (1979), we review his claim only to determine if a substantial risk of a miscarriage of justice occurred. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 119 & n.11 (1987). Although the defendant here did file a motion to revise and revoke his sentence, he neither specified which sentence he was challenging nor indicated that he was raising an issue regarding duplicative convictions.

defined by G. L. c. 140, § 121. See G. L. c. 269, § 10 (*a*), (*n*), (*o*); *Commonwealth* v. *Young*, 453 Mass. 707, 713 n.9 (2009). See also Instruction 7.600 of the Criminal Model Jury Instructions for Use in the District Court (2009). To convict the defendant of unlawful possession of ammunition, the Commonwealth was required to prove that the defendant knowingly possessed ammunition that met the legal definition of ammunition. See G. L. c. 269, § 10 (*h*). See also Instruction 7.620 of the Criminal Model Jury Instructions for Use in the District Court, *supra.* The term "ammunition" means, among other things, cartridges, cartridge cases, and bullets. See G. L. c. 269, § 10 (*o*). See also G. L. c. 140, § 121.

At trial, Officer Rose testified that the handgun that was recovered from the map pocket in the driver's side door of the SUV was a .38 caliber revolver that was loaded with three live rounds of ammunition and one empty shell casing. A ballistician, Detective Tyrone Camper of the Boston police department, testified that the firearm and ammunition met the statutory definitions of those items. See G. L. c. 140, § 121. There was no evidence that the defendant possessed any ammunition apart from that found loaded in the revolver. All of the required elements of unlawful possession of ammunition were encompassed by the elements of unlawful possession of a loaded firearm, and, therefore, the former crime was a lesser included offense of the latter crime.

The Commonwealth asserts that where multiple rounds of ammunition are recovered from a firearm, a jury are entitled to draw a distinction between the bullets, attributing some to a charge of unlawful possession of a loaded firearm and others to a charge of unlawful possession of ammunition. The Commonwealth has cited no authority to support this proposition, and we decline to draw such a distinction where, as here, all of the ammunition was loaded in the revolver. Additionally, the prosecutor did not mention in his closing argument that individual bullets should be attributed to different crimes, and the judge did not so instruct the jury. The Commonwealth's general argument would be more persuasive in those situations where ammunition is found loaded in a firearm and also found elsewhere in the possession of a defendant. In such circumstances, a jury could be instructed to distinguish among the ammunition.

We conclude that the defendant's convictions of unlawful possession of ammunition and unlawful possession of a loaded firearm are duplicative, and his separate sentences for each crime violated the double jeopardy clause because he was punished twice for possession of the same ammunition.[11] See *Commonwealth* v. *Constantino*, 443 Mass. 521, 523 (2005) (double jeopardy clause of Fifth Amendment protects against multiple punishments for same offense); *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382, 383-384 (1998), and cases cited. This error gave rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Constantino*, *supra* at 525-526. Accordingly, the defendant's conviction and sentence on the lesser included offense of unlawful possession of ammunition must be vacated.[12] See *Commonwealth* v. *Valliere*, *supra* at 371-372; *Commonwealth* v. *Costa*, 65 Mass. App. Ct. 227, 235 (2005).

4. *Second Amendment right to keep and bear arms.* The defendant finally contends that, pursuant to *McDonald* v. *Chicago*, 130 S. Ct. 3020 (2010) (*McDonald*), and *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) (*Heller*), Massachusetts cannot prohibit an individual from carrying a firearm for the purpose of self-defense.[13] In the defendant's view, the Com-

---

[11]The Legislature has not specifically authorized separate punishments for convictions of unlawful possession of ammunition under G. L. c. 269, § 10 (*h*), and unlawful possession of a loaded firearm under G. L. c. 269, § 10 (*n*). Contrast G. L. c. 269, § 10 (*a*) and (*n*) (conviction of unlawful possession of loaded firearm shall be further punished by sentence that shall begin from and after expiration of sentence for possession of firearm without license to carry); *Commonwealth* v. *Alvarez*, 413 Mass. 224, 231-232 (1992) (Legislature specifically authorized imposition of two consecutive sentences for violation of "school zone" statute and lesser included offense of possession of cocaine with intent to distribute).

[12]Because the defendant's sentence for unlawful possession of ammunition under G. L. c. 269, § 10 (*h*), did not increase the amount of time that he would spend incarcerated, see note 9, *supra*, we need not remand this matter for resentencing. See *Commonwealth* v. *Loadholt*, 456 Mass. 411, 424 n.8 (2010), *S.C.*, 460 Mass. 723 (2011).

[13]The defendant was tried in January, 2008. The United States Supreme Court decided *McDonald* v. *Chicago*, 130 S. Ct. 3020 (2010) (*McDonald*), on June 28, 2010, concluding that the Second Amendment to the United States Constitution is applicable to the States through the Fourteenth Amendment to the United States Constitution. See *id*. at 3026, 3050. Because the Second Amendment issue now raised by the defendant was not available to him until after *McDonald* was decided, his failure to raise the issue during his trial does

monwealth's statutory licensing scheme[14] impermissibly infringes on his right to keep and bear arms as guaranteed by the Second Amendment.[15] As such, he continues, his convictions of unlawful possession of a firearm under G. L. c. 269, § 10 (*a*), and unlawful possession of a loaded firearm under G. L. c. 269, § 10 (*n*), must be reversed. We disagree.

Preliminarily, we begin with a procedural matter. In this appeal, the defendant has raised the ancillary issue whether the Commonwealth's licensing scheme improperly places on him the burden of showing, by proof of licensure, that he was authorized to carry a firearm and, therefore, was exercising his Second Amendment rights lawfully. See G. L. c. 278, § 7.[16] We conclude that this issue is not properly before the court.

Following his convictions, the defendant's appeal was entered in the Appeals Court on May 24, 2010, and his brief was filed on June 4, 2010. Relying on *Heller*, and noting that the United States Supreme Court had heard oral arguments in *McDonald* on March 2, 2010, the defendant argued only that the Second Amendment was applicable to the States, and that the Commonwealth's licensing scheme impermissibly infringed on his Second Amendment right to keep and bear arms. On January 21, 2011, we transferred the case to this court on our own motion. The defendant then filed a motion pursuant to Mass. R. A. P. 27.1 (f), as appearing in 441 Mass. 1601 (2004), requesting leave

not preclude him from raising it in this appeal. See *Commonwealth* v. *Powell*, 459 Mass. 572, 587 (2011).

[14]General Laws c. 269, § 10 (*a*), makes it a crime to possess a firearm outside of one's residence or place of business without having a license to carry a firearm issued under G. L. c. 140, § 131. General Laws c. 269, § 10 (*h*) (1), makes it a crime to own or possess a firearm without having a firearm identification (FID) card pursuant to G. L. c. 140, § 129C. A license to carry a firearm is distinct from an FID card. See *Commonwealth* v. *Powell*, *supra* at 587-588 (FID card allows holder to own or possess firearm, but not to carry one); *Commonwealth* v. *Walker*, 17 Mass. App. Ct. 182, 185 (1983).

[15]The Second Amendment provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."

[16]General Laws c. 278, § 7, provides that a "defendant in a criminal prosecution, relying for his justification upon a license . . . shall prove the same; and, until so proved, the presumption shall be that he is not so authorized." See *Commonwealth* v. *Powell*, *supra* at 582; *Commonwealth* v. *Couture*, 407 Mass. 178, 181-183, cert. denied, 498 U.S. 951 (1990); *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977).

to file a new brief on the grounds that "[n]ew relevant Second Amendment case law" had been decided since the filing of the briefs in the Appeals Court (namely, *McDonald*), and that "[a] new brief will enable argument on the new case law, as opposed to just submitting a letter pursuant to" Mass. R. A. P. 16 (l), as amended, 386 Mass. 1247 (1982). The motion was allowed.

Because we transferred the case to this court on our own motion and not in response to an application for further appellate review, the governing rule is Mass. R. A. P. 11 (g) (1), 365 Mass. 854 (1974), which provides: "If at the time of transfer all parties have served and filed briefs in the Appeals Court, *no further briefs may be filed* except that a reply brief may be served and filed on or before the last date allowable had the case not been transferred, or within ten days after the date on which the appeal is docketed in the full Supreme Judicial Court, whichever is later" (emphasis added). Here, prior to the transfer, both the defendant and the Commonwealth had filed briefs, and the defendant also had filed a reply brief. Therefore, the defendant's motion to file a new brief in this court should not have been allowed. Notwithstanding this fact, and given that the defendant's motion was allowed, his new brief was limited to addressing the effect of *McDonald* on the issues he already had raised in the Appeals Court. The defendant's new brief was not a vehicle for raising, for the first time, an additional issue concerning the burden of proof under G. L. c. 278, § 7, and its presumption that the keeping and bearing of arms is unlawful absent proof of licensure.[17] See note 16, *supra*. Accordingly, we do not consider this new and separate issue. See *Commonwealth* v. *Loadholt*, 460 Mass. 723, 726-727 (2011) (*Loadholt*).

We return now to the matter of the defendant's right to keep

---

[17]The defendant's challenge to the statute, both in terms of its allocation of the burden of proof and its presumption of unlawfulness, is not a constitutional issue that can be raised for the first time on appeal. See *Commonwealth* v. *Rembiszewski*, 391 Mass. 123, 126 (1984) ("We have excused the failure to raise a constitutional issue at trial . . . when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial . . . to afford the defendant a genuine opportunity to raise his claim at [that] juncture[] of the case"). See also *Commonwealth* v. *Loadholt*, 460 Mass. 723, 727 (2011) (nothing in *McDonald* or *District of Columbia* v. *Heller* 554 U.S. 570 [2008], has altered or abrogated statutory presumption set forth in G. L. c. 278, § 7); *Commonwealth* v. *Powell, supra.*

and bear arms absent any licensing requirements. In *Heller*, the United States Supreme Court considered whether a District of Columbia prohibition on the possession of "usable handguns" in the home violated the Second Amendment. Based on both textual and historical analyses, the Court concluded that the Second Amendment guarantees an individual right to keep and bear firearms in one's home for the purpose of self-defense. See *Heller*, *supra* at 628-630, 635. At the same time, the Court qualified this right, stating that it is "not unlimited." *Id.* at 626. After affirming its prior precedent recognizing that the right protected by the Second Amendment pertains to the bearing of arms for lawful purposes, see *id.* at 624-625, the Supreme Court opined that an individual's Second Amendment right does not prohibit laws regulating who may purchase, possess, and carry firearms, and where such weapons may be carried. See *id.* at 626-627. More specifically, although not purporting to identify a comprehensive list of presumptively lawful regulatory measures, the Court stated: "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.*

A significant question not presented in *Heller* was the continuing vitality of *United States* v. *Cruikshank*, 92 U.S. 542, 553 (1875), which held that the Second Amendment was applicable only to the Federal government, and not to the States. See *Heller*, *supra* at 619-620. See also *Commonwealth* v. *Runyan*, 456 Mass. 230, 233-234 & n.4 (2010). In *McDonald*, the Supreme Court answered this question. It opined that the right to keep and bear arms is "among those fundamental rights necessary to our system of ordered liberty," *McDonald*, *supra* at 3042, and concluded that the Second Amendment is fully applicable to the States through the Fourteenth Amendment. See *id.* at 3050. Notably, the Court reiterated that an individual's rights under the Second Amendment are limited, and that "incorporation does not imperil every law regulating firearms." *Id.* at 3047.

After reviewing the principles articulated in *Heller* and *Mc-Donald*, this court considered in *Loadholt, supra* at 725-726, whether the Second Amendment bars any licensing system pertaining to the possession of a firearm or ammunition. The defendant in *Loadholt* raised a facial challenge to the constitutionality of G. L. c. 269, § 10 (*h*) (1), because he was precluded from challenging his own convictions under the statute where he had not applied for and been denied a firearm identification (FID) card. See *id.* at 725. See also *Commonwealth* v. *Gordon*, 354 Mass. 722, 725 (1968) ("in a prosecution for violation of a licensing statute which is unconstitutional on its face, the issue of its validity is presented even in the absence of an application for a license"). Relying on the Supreme Court's articulation in *McDonald, supra* at 3047, and *Heller, supra* at 626-627, of the limitations on an individual's right to keep and bear arms, we concluded that the requirement of licensing before one may possess a firearm or ammunition does not by itself render the licensing statute unconstitutional on its face. See *Loadholt, supra* at 726. That ruling is dispositive here. Accordingly, the defendant's challenge to the Commonwealth's statutory licensing scheme must fail.

It does not appear in this case that the defendant has raised an as-applied challenge to the Commonwealth's statutory licensing scheme, nor could he properly do so. In *Commonwealth* v. *Powell*, 459 Mass. 572, 589-590 (2011), we concluded that a defendant could not challenge his convictions under G. L. c. 269, § 10 (*a*) and (*h*) (1), where he never attempted to obtain a license to carry a firearm or an FID card and, consequently, could not demonstrate that he was aggrieved by the denial of his application. See *Loadholt, supra* at 725. See also *Commonwealth* v. *Gordon, supra*, quoting *Massachusetts Comm'n Against Discrimination* v. *Colangelo*, 344 Mass. 387, 390 (1962) ("Only one whose rights are impaired by a statute can raise the question of its constitutionality, and he can object to the statute only as applied to him"). Here, there was no evidence that the defendant ever applied for a license to carry a firearm or an FID card. At trial, the defendant testified that he did not own a gun or possess any ammunition, and that the revolver found in the SUV was not his. Even if the defendant had applied for a license to carry a firearm or an FID

card, his prior felony drug conviction would have rendered him ineligible, and the Supreme Court has expressly approved of this type of disqualification. See *Heller, supra* at 626 (upholding prohibitions on possession of firearms by felons). See also *Loadholt, supra* at 726 n.7.

5. *Conclusion.* On the indictment charging unlawful possession of ammunition under G. L. c. 269, § 10 (*h*), the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed. All of the remaining judgments of conviction are affirmed.

*So ordered.*