SUPERIOR COURT 
 
 COMMONWEALTH v. ZACHARY CLOUGH

 
 Docket:
 2381CR00050
 
 
 Dates:
 October 15 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 MIDDLESEX
 

 
 Keywords:
 DECISION AND ORDER ON DEFENDANT’S MOTION TO DISMISS THE FIREARM AND FEEDING DEVICE POSSESSION INDICTMENTS
 
 

 The Commonwealth alleges that Zachary Clough was driving his girlfriend’s car in Pepperell, Massachusetts, when he put a loaded firearm on his lap and threatened to kill his girlfriend, who was in the front passenger seat. It also alleges that soon thereafter Clough stopped the vehicle, smashed the rearview mirror and windshield, fled on foot, stashed the firearm in some nearby woods, and then—after being found by the police and taken into custody—told the police where they could find the firearm and said that it had one round of ammunition in the chamber and 14 more rounds in the magazine. Clough lives in New Hampshire. He never sought a Massachusetts firearm license.
Mr. Clough has been indicted for possessing a loaded firearm and a large capacity feeding device without a license, assault with a dangerous weapon, witness intimidation, vandalizing property, and improper firearm storage.
Clough has moved to dismiss the charges under G.L. c. 269, § 10(a), (m), and (n) for possessing a firearm, a loaded firearm, and a large capacity feeding device without getting a nonresident firearm license under G.L. c. 140, § 131F. He contends that these statutes violate Clough’s right to bear arms as protected by the Second Amendment to the United States Constitution and his rights to travel and to equal protection as protected by the Fourteenth Amendment.
The Court will allow the motion in part with respect to the firearm and loaded firearm possession indictments. The Commonwealth agrees that these charges should be dismissed because the Supreme Judicial Court recently held that the nonresident firearm licensing scheme in place when Clough allegedly committed these crimes imposed an unconstitutional limitation on the Second Amendment right to bear arms. The Court will deny the motion in part with respect to the charge for unlawful possession of a large capacity feeding device. Clough has not shown that the plain text of the Second Amendment covers possessing a large capacity magazine. And requiring non-residents to seek and
 
                                                            -1-
 
obtain a firearm license before they may lawfully possess such a device in Massachusetts does not violate the right to travel or otherwise violate the Equal Protection Clause.
1. Firearm and Loaded Firearm Charges. People who reside elsewhere may carry or otherwise possess a loaded firearm in Massachusetts if they first obtain a firearm license from the Colonel of the Massachusetts State Police or their designee. See G.L. c. 140, § 131F; G.L. c. 269, §§ 10(a) & (n).
In June 2022, the nonresident firearm licensing statute provided that a temporary license to carry firearms, feeding devices, or ammunition “may be issued” to someone who does not live in Massachusetts “subject to such terms and conditions” that the Colonel “may deem proper,” and may be renewed after an initial one year term “if[,] in his discretion, such renewal is necessary.” See Commonwealth v. Donnell, 495 Mass 471, 482 (2025) (quoting G.L. c. 140,
§ 131F, as in effect before Aug. 10, 2022).
The SJC has held that this version of § 131F violated the Second Amendment because the language quoted above permitted “unfettered discretion to deny licenses even where the applicant is otherwise qualified,” and that therefore a nonresident charged under G.L. c. 269, § 10(a), with unlawful firearm possession without a license while this version of § 131F was in effect is entitled to dismissal of that charge. Id. at 481.[1] [2]
Clough is charged under G.L. c. 269, § 10(a) and (n), with possessing a firearm and with possessing a loaded firearm without a license in Massachusetts on June 16, 2022. The Commonwealth concedes that, under Donnell, the Court should dismiss indictments 002 and 003. The Court will do so.
 
--------------------------------------------
 
[1] The Legislature amended G.L. c. 140, § 131F, effective August 10, 2022, to provide that “a firearms license ‘shall be issued’ to a nonresident applicant so long as that applicant is neither a ‘prohibited person,’ such as a felon or minor, or a person ‘determined unsuitable,’ about whom … ‘credible information’ exists that issuing a license would pose ‘a risk to public safety or a risk of danger to self or others.’ ” Commonwealth v. Marquis, 495 Mass. 434, 436 (2025) (quoting § 131F as amended by St. 2022, c. 175, §§ 17B–22). This revised version of § 131F does violate the Second Amendment. See Marquis, supra, at 446–460.
[2] The Supreme Judicial Court partially abrogated Donnell to the extent it held  that it applied to persons who had been convicted of a “felony” or a “violent crime” within the meaning of G.L. c. 140, § 131F(I). See Commonwealth v. Rodriguez, 496 Mass. 627, 642 n.8 (2025).
 
                                                            -2-
 
2. Large-Capacity Feeding Device Charge. The indictment against Clough under G.L. c. 269, § 10(m), for unlawful possession of the large capacity, 15-round magazine inserted into his Glock 19 pistol is a different matter.
Under Massachusetts law, it was unlawful in June 2022 for a nonresident to possess a large capacity firearm feeding device capable of accepting more than ten rounds of ammunition if they did not have a Massachusetts firearm license. See G.L. c. 140, § 131F; G.L. c. 269, § 10(m).[3]
Clough has not shown that this statutory scheme governing nonresidents’ possession of large capacity feeding devices violated his right to keep and bear arms under the Second Amendment or his right to travel or any other right to equal protection under the Fourteenth Amendment.
2.1. Second Amendment Challenge. Clough’s assertion that Massachusetts law violates the Second Amendment to the United States Constitution by making it unlawful to possess a large capacity feeding device without a license is without merit. A large capacity magazine like the one allegedly in Clough’s possession is not an “arm” within the meaning of the Second Amendment.
The Second Amendment protects “ ’the right of law-abiding, responsible citizens to use arms’ for self-defense,” both at home and in public. New York State Rifle & Pistol Ass’n, Inc. v. Bruen, 597 U.S. 1, 26 (2022), quoting District of Columbia v. Heller, 554 U.S. 570, 635 (2008). “[T}he ‘textual elements’ of the Second Amendment’s operative clause—‘the right of the people to keep and bear Arms, shall not be infringed’—’guarantee the individual right to possess
 
--------------------------------------------
 
[3] Since October 2, 2024, a separate statute (G.L. c. 140, § 131M) has generally made it illegal for anyone to possess a large capacity feeding device in public in Massachusetts, whether they have a firearm license or not. As of June 2022, it was unlawful under § 131M to sell, transfer, or possess a large capacity feeding device “that was not otherwise lawfully possessed on September 13, 1994.” Section 131M was amended effective October 2, 2024, to make it unlawful to possess any large capacity feeding device, whether it was lawfully possessed at an earlier time or not, except on one’s own property, on private property not open to the public (with permission from the property owner), on the premises of a licensed firearms dealer or gunsmith for the purpose of lawful repair, at a licensed firing range or sports shooting competition venue, or while travelling to and from these locations. See G.L. c. 140, § 131M(a) & ©, as inserted by St. 2024, c. 135, § 71. This statute is not relevant here because Clough has not been charged with violating § 131M.
 
                                                            -3-
 
and carry weapons in case of confrontation.’ ” Bruen, supra, at 20, quoting Heller, supra, at 592.[4]
The Supreme Court has directed that, “[w]hen the Second Amendment’s plain text covers an individual’s conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation’s historical tradition of firearm regulation.” Bruen, 597 U.S. at 24.
Under this test, “[i]f the regulated conduct falls outside the scope of the Second Amendment, our analysis ends.” Commonwealth v. Canjura, 494 Mass. 508, 511 (2024). In other words, “[w]here a challenged regulation impacts conduct that the Second Amendment’s plain text does not cover, the Second Amendment challenge fails, and the reviewing court need not precede to Bruen’s second step.” Ortega v. Lujan Grisham, 741 F. Supp. 3d 1027, 1065 (D.N.M. 2024); accord, e.g., B&L Productions, Inc. v. Newsom, 104 F.4th 108, 117 (9th Cir. 2024).
“When raising a Second Amendment challenge, an individual has the initial burden of showing that ‘the Second Amendment’s plain text covers [his] conduct.’ ” Snope v. Brown, 145 S. Ct. 1534, 1535 (June 2, 2025) (Thomas, J., dissenting from denial of certiorari), quoting Bruen, 597 U.S. at 17; accord Frey v. City of New York, No. 23-365-cv, 2025 WL 2679729, at *3 (2d Cir. Sept. 19, 2025); Rocky Mountain Gun Owners v. Polic, 121 F.4th 96, 113 (3d Cir. 2024); B & L Productions, Inc. v. Newsom, 104 F.4th 108, 117 (9th Cir. 2024), cert. denied,   145 S.Ct. 1958 (2025); United States v. Jackson, 138 F.4th 1244, 1251 (10th Cir. 2025); Hanson v. District of Columbia, 120 F.44th 223, 232 (D.C. Cir. 2024), cert. denied, 2025 WL 1603612 (June 6, 2025).
Thus, the burden is on Clough to show that the Second Amendment’s plain text covers the conduct that he engaged in by possessing a large capacity feeding device. Clough has not met that burden.
A licensing requirement for possessing a large capacity feeding device capable of holding more than ten rounds of ammunition does not implicate the Second
 
--------------------------------------------
 
[4] However, “the Second Amendment does not protect” keeping or  bearing “those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.” Heller, 554 U.S. at 625; accord Bruen, 597 U.S. at 21, 47–48. Thus, “a weapon must be in common use for a lawful purpose to be protected” by the Second Amendment. United States v. Price, 111 F.4th 392, 405 (4th Cir. 2024) (en banc), cert. denied, 145 S.Ct. 1891 (2025); accord, e.g., Ramirez v. Commonwealth, 479 Mass. 331, 335 (2018).
 
                                                            -4-
 
Amendment because the text of that amendment “does not encompass the right to possess large-capacity magazines.” See Duncan v. Bonta, 133 F.4th 852, 869 (9th Cir. 2025) (en banc). Even a complete “ban on large-capacity magazines does not fall within the plain text of the Second Amendment.” Id. at 867 (upholding State law barring possession of large capacity magazines); accord State v. Gator’s Custom Guns, Inc., 568 P.3d 268, 283–284 (Wash. 2025) (en banc) (upholding State law barring manufacture, distribution, importation, and sale of large capacity magazines).
A magazine by itself is not a weapon. “Without an accompanying firearm, a large-capacity magazine is benign, useless in combat for either offense or defense. Large-capacity magazines thus fall clearly within the category of accessories, or accoutrements, rather than arms.” Duncan, supra.
Of course, a law barring possession of any kind of magazine for semi-automatic weapons would implicate the Second Amendment. “The Second Amendment’s text necessarily encompasses the corollary right to possess a magazine for firearms that require one, just as it protects the right to possess ammunition and triggers.” Duncan, 133 F.4th at 867–868.
“But a large-capacity magazine … is not necessary to operate any firearm. … To the contrary, firearms that accept magazines operate as intended when equipped with magazines containing ten or fewer rounds. Accordingly, the Second Amendment’s plain text does not encompass a right to possess large- capacity magazines.”[5] Id. at 868 (emphasis in original); accord Gator’s Custom Guns, 568 P.3d 268, 283–284 (Second Amendment not implicated by ban on large capacity magazines because no firearm requires a magazine capable of accepting more than ten rounds of ammunition to function); Oregon Firearms
 
--------------------------------------------
 
[5] The United States Courts of Appeals for the First Circuit and for the Second Circuit recently assumed (without deciding) that large-capacity magazines are protected by the plain text of the Second Amendment, but went on to hold that a State law completely barring possession of such devices did not violate the Second Amendment. See Ocean State Tactical, LLC v. Rhode Island, 95 F.4th 38, 43–50 (1st Cir. 2024), cert. denied, 145 S.Ct. 2771 (2025); National Association for Gun Rights v. Lamont, Nos. 23-1162 & 23-1344, 2025 WL 2423599, at *13–*22 (2d Cir. Aug. 22, 2025). The Court respectfully disagrees with the District of Columbia Circuit’s conclusion that, because a magazine of some size is needed to operate a semi-automatic handgun, it follows that large-capacity magazines constitute “arms” within the meaning of the plain text of the Second Amendment. See Hanson, 120 F.4th at 232.
 
                                                            -5-
 
Federation v. Kotek, 682 F.Supp.3d 874, 912 (D.Or. 2023) (same); Capen v. Campbell, 708 F.Supp.3d 65, 89 (D.Mass. 2023) (Saylor, C.J.) (denying preliminary injunction that would have barred enforcement of statutory ban on possession of most large capacity feeding devices under G.L. c. 140, § 131M, concluding in part that large capacity magazines do not “fall within the protection of the Second Amendment” because “any semiautomatic weapon using a detachable magazine can accept one that holds ten rounds or fewer”), aff’d on other grounds, 134 F.4th 660, 676 (1st Cir. 2025) (concluding that § 131M is consistent with “the nation’s historical tradition of weapons regulations”).
“The proper inquiry” to determine whether “an item that is not an arm itself” is covered by the plain text of the Second Amendment “is whether the component or accessory is necessary to the ordinary operation of the weapon, not whether, when one voluntarily chooses to use an optional accessory, the accessory is attached to the weapon.” Duncan, 133 F.4th at 868. If a firearm component or accessory “is not necessary or integral to the operation of a firearm, it does not fall within the Second Amendment's plain text.” Arms v. City of Chicago, No. 10 C 4257, 2024 WL 3495010, at *8 (N.D. Ill. July 22, 2024) (laser sights are not “arms” covered by Second Amendment), quoting United States v. Berger, 715 F. Supp. 3d 676, 700 (E.D. Pa. 2024) (silencers are not “arms” covered by Second Amendment).
“Many optional accessories—such as a high-powered scope for a rifle, a gun sling, or a silencer—may be attached to a firearm without necessarily falling within the scope of the text of the Second Amendment.” Duncan, supra; accord United States v. Saleem, 2024 WL 5084523, at *2 (4th Cir. Dec. 12, 2024) (unpublished) (since “[a] firearm will still be useful and function without a silencer attached, and a silencer is not a key item for the arm’s upkeep and use
…, a silencer does not fall within the scope of the Second Amendment’s protection”); United States v. Cox, 906 F.3d 1170, 1186 (10th Cir. 2018) (silencers are firearm accessories, not bearable arms protected by Second Amendment).
Though Clough needed a compatible magazine loaded with ammunition in order to make his pistol operable, he could have effectively used the weapon to defend himself by using a 10-round rather than a 15-round magazine. Clough does not contend and has not shown that 10-round magazines were not available to fit his Glock 19 pistol.
And since Clough did not need to possess a magazine capable of holding more than ten rounds of ammunition in order to keep and bear a functional pistol,
 
                                                            -6-
 
the penalty under G.L. c. 269, § 10(m), for possessing such a large-capacity feeding device without a license does not restrict conduct protected by the Second Amendment. See Duncan, 133 F.4th at 867–869.
2.2. Fourteenth Amendment Challenge. Clough further contends that the statute making it unlawful for a nonresident to possess a large capacity feeding device without a Massachusetts firearm license, combined with the nonresident firearm licensing statute, impermissibly infringe on the right to travel and to equal protection under the Fourteenth Amendment. This claim is also without merit.
Since Clough never applied for a Massachusetts firearm license, his Fourteenth Amendment challenge constitutes a claim that the relevant statutes are unconstitutional on their face, not a claim that the particular manner in which the statutory scheme is being applied to him is unlawful. See, e.g., Commonwealth v. Marquis, 495 Mass. 434, 441 (2025);  Commonwealth v. Johnson, 461 Mass. 44, 58 (2011). Clough lacks standing to assert that G.L. c. 269, § 10(m) and G.L. c. 140, § 131F violate the Fourteenth Amendment as applied to him. Marquis, supra. The Court must therefore treat Clough’s Fourteenth Amendment claim as a challenge to the facial validity of § 10(m) and § 131F. Id.
As a result, Clough may prevail on his Fourteenth Amendment argument only if he shows that the statutory scheme “is unconstitutional in all of its applications.” Marquis, 495 Mass. at 442, quoting Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 (2008). He has not done so.
The SJC recently held that the current versions of G.L. c. 269, §§ 10(a) and (n), which require that one obtain a firearm license before possessing a firearm or ammunition in Massachusetts, do not infringe upon a New Hampshire resident’s right to travel and to equal protection. Marquis, supra, at 463.
The licensing scheme that similarly required a Massachusetts firearm license before a non-resident may possess a large capacity magazine is no different.
The constitutional right to travel freely among the United States “contains three basic components: ‘[(1)] the right of a citizen of one State to enter and to leave another State, [(2)] the right to be treated as a welcome visitor rather than unfriendly alien when temporarily present in the second State, and ... [(3)] for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.’ ” Id. at 461, quoting Saenz v. Roe, 526 U.S.  489, 500  (1999).  “Because  there  is  no  contention  that  the  defendant  elected  or
 
                                                            -7-
 
attempted to elect to become a permanent resident of the Commonwealth, only the first two components of the right to travel are at issue.” Id.
With respect to the first component of the right to travel, since § 10(m) does not implicate the Second Amendment, it did not require Clough to give up his right to keep and bear arms in  order  to  travel  to  Massachusetts.  Cf.  Marquis,  495 Mass. at 463. Furthermore, “the mere fact of having to apply for and obtain a license before entering the Commonwealth” with a large capacity feeding device “does not penalize the right to travel” (emphasis in original). Id. at 460– 461 & 462, quoting Saenz, 526 U.S. at 498. The statutory scheme therefore does not impair anyone’s right to enter and leave Massachusetts.
With respect to the second component, since the Colonel was free before June 2022 to deny a nonresident’s application for a firearm license by applying the same substantive criteria that applied to similar applications by Massachusetts residents, the statutory scheme did not impair the right of citizens of other States to be treated as welcome visitors on its face, in all potential applications. Cf. Marquis, 495 Mass. at 462–463.
Finally, to the extent that Clough is pressing an equal protection claim untethered to his right to travel, the nonresident firearm licensing scheme is subject to rational basis review because it does not violate the Second Amendment or any other fundamental right and does not rely upon any suspect classification. Id. at 463–465.
And it easily satisfies rational basis review because the Commonwealth has “a legitimate interest in regulating firearm possession within its borders so as to protect public safety.” Id. at 465. Like the statute governing firearm license applications by Massachusetts residents, § 131F as in effect in June 2022 passes muster under the rational basis test because it served the legitimate purposes of giving the State Police Colonel discretion “to keep firearms out of the hands of persons who are not categorically disqualified, e.g., convicted felons, but who nevertheless pose a palpable risk that they would not use a firearm responsibly if allowed to carry in public.” Cf. Chief of Police of City of Worcester v. Holden, 470 Mass. 845, 854 (2015).
“The Commonwealth’s interest in verifying the suitability and prohibition status of nonresidents who seek to publicly carry firearms within its borders is no weaker than its interest in verifying the suitability and prohibition status of residents who seek to publicly carry firearms within its borders.” Marquis, 495
 
                                                            -8-
 
Mass. at 465. Differences in processing times and in the duration of nonresident versus resident licenses also have a rational basis and do not violate equal protection. Id. at 467–469.
ORDER
Defendant’s partial motion to dismiss is allowed in part with respect to indictments 002 and 003 (for unlawful possession of a firearm and unlawful possession of a loaded firearm) and denied in part with respect to indictment 001 (for unlawful possession of a large capacity feeding device).
/s/Kenneth W. Salinger Justice of the Superior Court
October 15 2025