NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12350

COMMONWEALTH  vs.  JOHN CASSIDY.


Bristol.     January 5, 2018. - May 14, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, & Budd, JJ.


Firearms.  Constitutional Law, Right to bear arms, Vagueness of
     statute.  Due Process of Law, Vagueness of statute.
     Evidence, Firearm.  Statute, Validity  Practice, Criminal,
     Instructions to jury.



Indictments found and returned in the Superior Court
Department on March 10, 2011.

The cases were tried before Robert C. Cosgrove, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


John E. Cassidy, pro se.
Mary E. Lee, Assistant District Attorney, for the
Commonwealth.
David Rangaviz, Committee for Public Counsel Services, for
Erickson Resende, amicus curiae, submitted a brief.
William Burns, pro se, amicus curiae, submitted a brief.


GAZIANO, J.  The defendant lawfully purchased an AK-47-

style pistol and a nine millimeter pistol in Texas and brought

them with him when he moved to Massachusetts in August, 2010, to attend law school. At some point between that time and his March 11, 2011, arrest, the defendant was advised by a classmate that firearms must be registered in Massachusetts. See G. L. c. 140, §§ 129B, 131; G. L. c. 269, § 10 (a). Although he obtained the forms necessary to register for a license to possess a firearm in Massachusetts, the defendant did not file them and did not obtain a license to carry or a firearm identification (FID) card; at trial, he testified that he could not afford to pay the registration and licensing fees. Under Massachusetts law, the nine millimeter pistol, which could hold twelve rounds of ammunition, fell within the definition of a large capacity weapon; such a weapon has separate licensing and registration requirements in the Commonwealth. See G. L. c. 269, § 10 (m). The AK-47-style pistol met the Massachusetts definition of an assault weapon; possession of such weapons is heavily restricted in the Commonwealth.[1] See G. L. c. 140, §§ 121, 131M.

During a search of the defendant's apartment pursuant to a search warrant, police officers located the two pistols, four high capacity magazines, several boxes of ammunition, and a bag

_____

[1] As the defendant argued, under Texas law, there is no separate category of "high capacity" handguns, and no license is required to possess a handgun in an individual's home or vehicle, or to possess a rifle. See Tex. Penal Code Ann. §§ 46.01, 46.02, 46.05.

containing loose rounds of various types of ammunition in the defendant's bedroom. He was charged with unlawful possession of these items. The defendant did not dispute that the weapons were his or that they were operable firearms; in a recorded interview, portions of which were read to the jury, he told an investigating officer that he had legally purchased the weapons in Texas and had brought them with him when he moved to Massachusetts. The defendant also testified similarly at trial. A Superior Court jury convicted the defendant of unlawful possession of an assault weapon, G. L. c. 140, § 131M; unlawful possession of four large capacity feeding devices, G. L. c. 269, § 10 (m); unlawful possession of a large capacity firearm, G. L. c. 269, § 10 (m); and unlawful possession of ammunition, G. L. c. 269, § 10 (h).[2]

On appeal, the defendant contends that his convictions of possession of a large capacity firearm and large capacity feeding devices should be overturned because the Commonwealth failed to prove that he knew the firearm and feeding devices he possessed qualified as "large capacity," meaning that they were

---

[2] Before sentencing, the Commonwealth entered nolle prosequis on one count charging assault and battery, one count charging assault by means of a dangerous weapon (a metal folding chair), and one count charging assault and battery by means of a dangerous weapon. Those charges stemmed from an alleged altercation between the defendant and his housemate, which led to the issuance of the search warrant; the charges were not prosecuted at trial.

capable of holding more than ten rounds of ammunition.  See G. L. c. 140, § 121.  He argues also that Massachusetts firearms statutes are unconstitutionally vague and that they violate his right to bear arms under the Second Amendment to the United States Constitution and art. 17 of the Massachusetts Declaration of Rights; in addition, he contends similarly that the Commonwealth's interpretation of art. 17 to include a "collective" rather than an "individual" right likewise deprives him of his right to bear arms.

We conclude that, to sustain a conviction under G. L. c. 269, § 10 (m), the Commonwealth must prove that a defendant either knew the firearm or feeding device met the legal definition of "large capacity" or knew it was capable of holding more than ten rounds of ammunition.  Here, the judge adequately, if minimally, instructed the jury on the elements necessary to sustain a conviction, and a reasonable jury could have inferred that the defendant knew that the nine millimeter pistol and the magazines were capable of holding more than ten rounds of ammunition.  We conclude also that the defendant has not shown a violation of his rights under the Second Amendment or art. 17 by any provision of G L. c. 269, § 10.  Accordingly, we affirm the defendant's convictions.[3]

---

[3] We acknowledge the amicus briefs submitted by Erickson Resende and William Burns.

1.  Background.  We recite the evidence the jury could have found in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

The defendant drove from Texas to Massachusetts in August, 2010, to attend law school.  He brought two legally obtained firearms and legally obtained magazines and ammunition with him and kept them in his bedroom in a two-bedroom apartment that he leased with another law student.

On March 2, 2011, Dartmouth police officers executed a search warrant for the defendant's apartment.  The officers found a nine millimeter pistol under a pillow on the defendant's bed; while there was no round in the chamber and the safety was engaged, the pistol was loaded.  In a suitcase in a bedroom closet, officers found an AK-47-style pistol with an empty magazine, two additional magazines -- one loaded and one unloaded -- that fit into that pistol, an extended magazine for the nine millimeter pistol, full boxes of ammunition, and a bag of loose ammunition.[4]  A tag on the suitcase and identification

---

[4] General Laws c. 140, § 121, distinguishes rifles from firearms, defining a rifle as "a weapon having a rifled bore with a barrel length equal to or greater than [sixteen] inches" and a firearm as "a pistol, revolver or other weapon of any description . . . of which the length of the barrel or barrels is less than [sixteen] inches."

One of the officers testified that when he first discovered the defendant's AK-47-style pistol, he thought it was an AK-47-

cards found in the bedroom indicated that it was the defendant's bedroom.

The officers crossed the street to the parking lot of the law school, where the defendant had been taken into custody. After waiving the Miranda rights, the defendant informed the officers that he had "an AK and a nine" in his bedroom that were "legit" in Texas but not yet registered in Massachusetts.

In a video recorded interview at the police station, the defendant again indicated that he had bought the two firearms in Texas and had transported them to Massachusetts in his vehicle when he drove to Massachusetts to attend law school in August, 2010. He said that he had grown up around guns, had purchased the nine millimeter pistol for recreational use, and had fired both firearms in Texas. He also told the detective that the AK-47-style pistol was not loaded, and that the nine millimeter pistol had three or four rounds in the magazine "[b]ut definitely it's not full so it's not going to wear the spring out on it." He said that, although he was not familiar with Massachusetts's firearms laws, he had learned from one of his law school classmates that he was required to register the firearms in Massachusetts. He obtained but did not file the

---

style rifle, but "[b]ased on the specifications of the firearm, it was later found to be a pistol."

registration forms, because he did not have enough money to pay the licensing fees.

The defendant was charged with unlawful possession of an assault weapon, G. L. c. 140, § 131M;[5] unlawful possession of four large capacity feeding devices, G. L. c. 269, § 10 (m); unlawful possession of a large capacity firearm, G. L. c. 269,

---

[5] Under G. L. c. 140, § 121,

"'Assault weapon', shall have the same meaning as a semiautomatic assault weapon as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. [§] 921(a)(30) as appearing in such section on September 13, 1994, and shall include, but not be limited to, any of the weapons, or copies or duplicates of the weapons, of any caliber, known as: (i) Avtomat Kalashnikov (AK) (all models); (ii) Action Arms Israeli Military Industries UZI and Galil; (iii) Beretta Ar70 (SC-70); (iv) Colt AR-15; (v) Fabrique National FN/FAL, FN/LAR and FNC; (vi) SWD M-10, M-11, M-11/9 and M-12; (vi) Steyr AUG; (vii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and (viii) revolving cylinder shotguns, such as, or similar to, the Street Sweeper and Striker 12; provided, however, that the term assault weapon shall not include: (i) any of the weapons, or replicas or duplicates of such weapons, specified in appendix A to 18 U.S.C. [§] 922 as appearing in such appendix on September 13, 1994, as such weapons were manufactured on October 1, 1993; (ii) any weapon that is operated by manual bolt, pump, lever or slide action; (iii) any weapon that has been rendered permanently inoperable or otherwise rendered permanently unable to be designated a semiautomatic assault weapon; (iv) any weapon that was manufactured prior to the year 1899; (v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable assault weapon; (vi) any semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition; or (vii) any semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine."

§ 10 (m); and unlawful possession of ammunition, G. L. c. 269, § 10 (h).[6]

At trial on the seven firearm-related charges, two Dartmouth police officers testified concerning the search of the defendant's apartment and their interviews with him. Additionally, the head armorer of the Dartmouth police department, who is in charge of the department's firearms, identified the firearms, magazines, and various types of ammunition, test fired the two pistols, and testified that the firearms and magazines were fully functional. He indicated that the three magazines for the AK-47-style pistol each could hold thirty rounds of ammunition, the nine millimeter pistol with its original magazine could hold twelve rounds, and the extended magazine for the nine millimeter pistol was an after-market magazine that was "much larger than the one that came with the gun" and could hold either fifteen or twenty rounds. Finally, he testified that an application for a license to carry or an FID card costs one hundred dollars. See G. L. c. 140, §§ 129B (9A), 131 (i).

---

[6] As discussed, the defendant also was charged with assault by means of a dangerous weapon (a metal folding chair), G. L. c. 265, § 15 (b); assault and battery, G. L. c. 265, § 13A; and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b). The Commonwealth did not pursue these charges. See note 2, supra.

The defendant testified in his own defense. He said that the firearms were his, he had been hunting since he was eight years old, he purchased the firearms legally in Texas and brought them with him when he started law school, and he had not applied for a license or FID card after his arrival in Massachusetts.

The defendant was convicted of all of the firearms charges. The defendant initially sought relief before a single justice in the county court, pursuant to G. L. c. 211, § 3; that petition was denied without a hearing. The Appeals Court thereafter affirmed the defendant's convictions in a memorandum and order pursuant to its rule 1:28. We then granted the defendant's application for further appellate review.

2. Discussion. The defendant contends that his convictions under G. L. c. 269, § 10 (m), should be overturned because the Commonwealth failed to prove that he knowingly possessed a large capacity firearm and large capacity feeding devices. The defendant also argues that the statutes under which he was convicted are unconstitutionally vague because they are too complex to be understood and are enforced arbitrarily. In addition, he contends that the statutes violate his right to bear arms under the Second Amendment and art. 17 by impermissibly regulating possession of firearms.

a.  Knowledge that firearms and feeding devices have a large capacity.  General Laws c. 269, § 10 (m), prohibits individuals from "knowingly" possessing or having under their control a large capacity weapon or large capacity feeding device unless they possess a class A or class B license to carry firearms.  Under G. L. c. 140, § 121, a large capacity weapon is defined as "any firearm . . . (i) that is semiautomatic with a fixed large capacity feeding device; (ii) that is semiautomatic and capable of accepting, or readily modifiable to accept, any detachable large capacity feeding device; (iii) that employs a rotating cylinder capable of accepting more than ten rounds of ammunition in a . . . firearm . . . ; or (iv) that is an assault weapon."  A large capacity feeding device is "a fixed or detachable magazine, box, drum, feed strip or similar device capable of accepting, or that can be readily converted to accept, more than ten rounds of ammunition."  Id.

The defendant contends that in order to sustain his conviction under G. L. c. 269, § 10 (m), the Commonwealth was required to prove both that he knew he possessed a firearm and that he knew that that firearm qualified as "large capacity."[7]

---

[7] The defendant also contends that if the weapons and feeding devices had not been considered "large capacity," he would not have been required to obtain an FID card to possess them within his home.  In support of this argument, the defendant cites G. L. c. 140, § 129C (u), which allows some nonresidents who hold a license in another State to be exempt

In support of this argument, he relies on Staples v. United States, 511 U.S. 600, 602 (1994), where the United States Supreme Court held that, in order to convict the defendant of the illegal possession of a machine gun, in violation of 26 U.S.C. § 5845(a)(6), prosecutors were required to prove that he knew his rifle had the characteristics that brought it within the statutory definition of a machine gun. The Court differentiated firearms and rifles from other dangerous devices, such as hand grenades, that are highly regulated under public welfare statutes. Id. at 609-610 (distinguishing United States v. Freed, 401 U.S. 601 [1971]). Because the type of weapon owned by that defendant might "give no externally visible indication that it is fully automatic," it was possible that the government's reading of the statute "would impose criminal sanctions on a class of persons whose mental state -- ignorance of the characteristics of weapons in their possession -- ma[d]e their actions entirely innocent." Id. at 614-615.

By contrast, the Commonwealth points to this court's decision in Commonwealth v. O'Connell, 432 Mass. 657, 663-664 (2000), in which this court held that the Commonwealth was not

---

from Massachusetts licensing requirements "provided . . . that the licensing requirements of such nonresident's [S]tate of residence are as stringent as the requirements of the [C]ommonwealth for a firearm identification card . . . ." The defendant presented no evidence, however, that his Texas license would have satisfied that requirement.

required to prove that a defendant was aware of the length of the shotgun he possessed in order to be convicted of possession of a sawed-off shotgun.  "Although knowledge is an essential element of each crime, . . . the Commonwealth need not prove that the defendant knew that the physical characteristics of the firearm he possessed (such as barrel length) rendered it subject to regulation. . . .  Where, as here, the jury could have inferred that the defendant knew a particular firearm was in his possession, his ignorance vis-à-vis that firearm's dimensions is not a valid defense."  Id.  The Commonwealth argues that "large capacity" is a type of physical characteristic similar to barrel length.

"Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" Sheehan v. Weaver, 467 Mass. 734, 737 (2014), quoting Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010).  "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent."  Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008). That said, "[w]e will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable."  Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982).  See Black's Law Dictionary 11-12 (10th ed. 2014) (defining "absurdity" as "being grossly unreasonable"

and "[a]n interpretation that would lead to an unconscionable result, esp. one that . . . the drafters could not have intended"). "Where the words of the statute are ambiguous, we strive to make it an effectual piece of legislation in harmony with common sense and sound reason and consistent with legislative intent" (quotations and citation omitted). Commonwealth v. Pon, 469 Mass. 296, 302 (2014).

To determine the elements that the Commonwealth must prove, we begin with the text of G. L. c. 269, § 10 (m). That statute provides, in relevant part:

> "[A]ny person not exempted by statute who knowingly has in his possession, or knowingly has under his control in a vehicle, a large capacity weapon or large capacity feeding device therefor who does not possess a valid Class A or Class B license to carry firearms . . . , except as permitted or otherwise provided under this section or [G. L. c.] 140, shall be punished by imprisonment in a [S]tate prison for not less than two and one-half years nor more than ten years. The possession of a valid firearm identification card issued under [G. L. c. 140, § 129B,] shall not be a defense for a violation of this subsection; provided, however, that any such person charged with violating this paragraph and holding a valid firearm identification card shall not be subject to any mandatory minimum sentence imposed by this paragraph."

Courts generally interpret criminal statutes in a manner that is consistent with ordinary English usage. Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009). "That is to say courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as

applying that word to each element." Id.  As the Supreme Court

has explained:

>        "In ordinary English, where a transitive verb has an
> object, listeners in most contexts assume that an adverb
> (such as knowingly) that modifies the transitive verb tells
> the listener how the subject performed the entire action,
> including the object as set forth in the sentence.  Thus,
> if a bank official says, 'Smith knowingly transferred the
> funds to his brother's account,' we would normally
> understand the bank official's statement as telling us that
> Smith knew the account was his brother's.  Nor would it
> matter if the bank official said 'Smith knowingly
> transferred the funds to the account of his brother.'  In
> either instance, if the bank official later told us that
> Smith did not know the account belonged to Smith's brother,
> we should be surprised. . . .  Similar examples abound.  If
> a child knowingly takes a toy that belongs to his sibling,
> we assume that the child not only knows that he is taking
> something, but that he also knows that what he is taking is
> a toy and that the toy belongs to his sibling" (emphasis in
> original).

Id. at 650-651.  See Commonwealth v. Daley, 463 Mass. 620, 624

(2012).  See also A. Scalia & B.A. Garner, Reading Law:  The

Interpretation of Legal Texts 140-141, 147-151 (2012).

The Commonwealth's reliance on O'Connell, 432 Mass. at 663-

664, is misplaced.  That case addresses a conviction under G. L.

c. 269, § 10 (c), a statute that does not explicitly include the

word "knowingly."[8]  Accordingly, we did not construe the term

"knowingly" as applying to the entire direct object of "a sawed-

---

[8] General Laws c. 269, § 10 (c), provides, in relevant part:

"[W]hoever owns, possesses or carries on his person, or
carries on his person or under his control in a vehicle, a
sawed-off shotgun, as defined in [G. L. c. 140, § 121],
shall be punished . . . ."

off shotgun," and required the Commonwealth to prove in that case only the defendant's knowledge that he possessed the firearm.  Id.  But see Commonwealth v. Johnson, 461 Mass. 44, 52-53 (2011) (concluding that G. L. c. 269, § 10 [h], which criminalizes unlawful possession of ammunition and does not explicitly include mens rea requirement, contains implicit knowledge requirement).

When an adverb such as "knowingly" is explicitly inserted in a statute to modify a verb, it necessarily must modify the object of that verb:  it matters what the defendant knowingly had in his or her possession.  Then, "once [the adverb] is understood to modify the object of [that] verb[], there is no reason to believe it does not extend to the phrase which limits that object."  Flores-Figueroa, 556 U.S. at 657 (Scalia, J., concurring in part and concurring in the judgment).  Thus, in G. L. c. 269, § 10 (m), "knowingly" is an adverb that modifies both the transitive verb phrase, "has in his possession," and the entire direct object of the verb, "large capacity weapon." Accordingly, as one of the elements of a charge under G. L. c. 269, § 10 (m), the Commonwealth must prove that a defendant either knew a firearm or feeding device he or she possessed qualifies as having a large capacity under the statute or knew that the firearm or feeding device is capable of holding more than ten rounds of ammunition.

Here, the judge instructed the jury on the elements they were required to find in order to convict the defendant of unlawful possession of large capacity weapons and feeding devices as follows:

> "[T]he Commonwealth must prove three things beyond a reasonable doubt[:] first, that the defendant possessed and had under his control a large capacity weapon [or feeding device]; second, that what the defendant possessed or had under his control met the legal definition of a large capacity weapon [or feeding device]; and, third, that the defendant knew that he possessed or had under his control a large capacity weapon [or feeding device]."

The judge then provided the statutory definitions for large capacity weapons and feeding devices. While far from a model of clarity, and not a form of words we would encourage to be used in the future, the judge's instructions were appropriate. He adequately explained the elements of the offense, including the requirement that the defendant must know that he possessed a large capacity weapon or feeding device.[9]

In addition to challenging the jury instruction, the defendant also challenges the sufficiency of the Commonwealth's evidence to establish that he knew that the weapon and feeding devices he possessed qualified as "large capacity." In reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable

---

[9] A model instruction for prosecution of charges of unlawful possession of large capacity weapons and feeding devices is set forth in the Appendix.

to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original).  <u>Latimore</u>, 378 Mass. at 677, quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 319 (1979).

There was no direct evidence that the defendant knew that the nine millimeter pistol and the magazines had large capacities as defined under Massachusetts law.  "But knowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon." <u>Staples</u> v. <u>United States</u>, 511 U.S. 600, 615 n.11 (1994) ("firing a fully automatic weapon would make the regulated characteristics of the weapon immediately apparent to its owner").  See <u>Commonwealth</u> v. <u>Romero</u>, 464 Mass. 648, 653 (2013) ("Proof of possession of [contraband] may be established by circumstantial evidence, and the inferences that can be drawn therefrom" [citation omitted]).  The same is true for knowledge that a firearm or feeding device qualifies as "large capacity" under Massachusetts law.

Based on the evidence, as viewed in the light most favorable to the Commonwealth, the jury could have inferred that the defendant knew that the nine millimeter pistol and four magazines could hold more than ten rounds of ammunition.  The defendant had owned the firearms and magazines for a significant period of time; he testified that he purchased the nine

millimeter pistol at a particular gun store in Houston sometime "between the end of 2008 . . . [and the] beginning of 2009," and the AK-47-style pistol at the same store during the fall of 2009. He had fired the firearms in Texas. He was familiar with firearms more generally, had owned other firearms in the past, and had been hunting since he was eight years old. The defendant also demonstrated knowledge of the nine millimeter pistol's capacity by indicating that he did not fully load the magazine so that he would not wear out the spring. In addition, the three magazines for the AK-47-style pistol each were capable of holding thirty rounds of ammunition, and were noticeably larger than a magazine that holds ten rounds. Similarly, the extended, after-market magazine for the nine millimeter pistol, which the defendant had purchased separately, could hold either fifteen or twenty rounds; it, too, was noticeably larger than the stock magazine that was in the pistol when it was found, which the firearms expert testified holds twelve rounds.

Given the defendant's testimony about purchasing, loading, and shooting the two firearms; the manner in which he kept the AK-47-style pistol with its magazine unloaded; the manner in which he kept the nine millimeter pistol partially loaded (to save the spring from wear), but locked (for safety and accessibility); and the obvious large size of the thirty-round "banana-style" magazines and the after-market magazine, the jury

reasonably could have inferred that the defendant was aware that the magazines held more than ten rounds of ammunition.

b. Vagueness. The defendant also challenges the statutes under which he was convicted as being unconstitutionally vague, arguing that they are too complex to be understood and also are enforced arbitrarily. "A law is void for vagueness if persons of common intelligence must necessarily guess at its meaning and differ as to its application . . . or if it subjects people to an unascertainable standard" (quotations and citations omitted). Chief of Police of Worcester v. Holden, 470 Mass. 845, 854 (2015). See United States v. Williams, 553 U.S. 285, 304 (2008) ("A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement").

The defendant cites statistics showing that more than one-half of firearm charges in Massachusetts are dismissed and few result in sentences of incarceration. Standing alone, however, these statistics are insufficient to demonstrate arbitrary enforcement. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."

Williams, 553 U.S. at 306. Thus, statutes are determined to be unconstitutionally vague when officials possess unfettered discretion to decide whom to charge. See Kolender v. Lawson, 461 U.S. 352, 360-361 (1983) (statute requiring individuals to carry "'credible and reliable' identification" was unconstitutionally vague on its face "because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect may do in order to satisfy the statute"); Commonwealth v. Williams, 395 Mass. 302, 304-306 (1985) (ordinance prohibiting sauntering and loitering "in such a manner as to obstruct . . . travellers" was unconstitutionally vague); Commonwealth v. Sefranka, 382 Mass. 108, 110 (1980) (term "lewd, wanton and lascivious person" is unconstitutionally vague).

There is no such indeterminacy here. The statutes challenged by the defendant clearly indicate what is required of individuals who wish to possess firearms legally in the Commonwealth. The defendant testified that he was aware before his arrest that Massachusetts required registration of firearms, and that he had not registered either of his weapons because of the cost. In some circumstances, the Supreme Court has concluded that ignorance of the law may be a defense, where proscribed conduct is completely passive and a defendant has no reason to know of the requirements of the law. See Lambert v.

California, 355 U.S. 225, 228-230 (1957) (holding that defendant could not be convicted of violating felon registration ordinance by virtue of her mere presence in city). Such a claim is unrelated to a facial vagueness challenge, and does not appropriately describe the defendant's conduct here. The defendant's vagueness claim therefore fails.

c. Right to bear arms. Finally, the defendant argues that the statutes under which he was convicted violate his constitutional right to bear arms, protected by the Second Amendment and art. 17.[10] In District of Columbia v. Heller, 554 U.S. 570, 635 (2008), the Supreme Court held that a complete ban on handguns and a requirement that firearms held in a home be kept unloaded and disassembled violated the Second Amendment. Two years later, in McDonald v. Chicago, 561 U.S. 742, 791 (2010), the Court held that the Second Amendment also applies to the States through the Fourteenth Amendment to the United States Constitution. Yet, "the right secured by the Second Amendment is not unlimited." Heller, supra at 626. Regulations other than total handgun bans are permissible so long as they do not

---

[10] Because he did not apply for a license to carry or an FID card, the defendant cannot properly raise an as-applied challenge, see Commonwealth v. Johnson, 461 Mass. 44, 58 (2011), citing Commonwealth v. Powell, 459 Mass. 572, 589-590 (2011), cert. denied, 565 U.S. 1262 (2012), and he appropriately does not do so.

interfere with the Second Amendment's "core lawful purpose of self-defense."  Id. at 630, 636.

Since then, we have rejected challenges to Massachusetts's firearms statutes on Second Amendment and art. 17 grounds.  See, e.g., Commonwealth v. Gouse, 461 Mass. 787, 800-801 (2012); Commonwealth v. Johnson, 461 Mass. 44, 57-59 (2011); Commonwealth v. Loadholt, 460 Mass. 723, 723-724, 726 (2011); Commonwealth v. Powell, 459 Mass. 572, 573 (2011), cert. denied, 565 U.S. 1262 (2012).  Relying on Heller, 554 U.S. at 626-627, we determined that "an individual's Second Amendment right does not prohibit laws regulating who may purchase, possess, and carry firearms, and where such weapons may be carried." Johnson, supra at 57.  Furthermore, "the requirement of licensing before one may possess a firearm or ammunition does not by itself render the licensing statute unconstitutional on its face."  Id. at 58, citing Loadholt, supra at 726.  That ruling is dispositive here.

The assault weapon statute under which the defendant was convicted, G. L. c. 140, § 131M, also is not prohibited by the Second Amendment, because the right "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes."  Heller, 554 U.S. at 625.  The Second Amendment does not grant "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."

Id. at 626. A ban on assault weapons is more similar to the restriction on short-barreled shotguns upheld in United States v. Miller, 307 U.S. 174, 178 (1939), than the handgun ban overturned in Heller. "In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well[-]regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." Miller, supra. See Heller, supra at 627 (suggesting that "weapons that are most useful in military service -- M-16 rifles and the like -- may be banned"). Several United States Courts of Appeals have upheld similar bans on assault weapons. See Heller v. District of Columbia, 670 F.3d 1244, 1247-1248, 1262 (D.C. Cir. 2011) ("the prohibition of semi-automatic rifles and large-capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves"). See, e.g., Kolbe v. Hogan, 849 F.3d 114, 121 (4th Cir.), cert. denied, 138 S. Ct. 469 (2017); New York State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 247-248 (2d Cir. 2015), cert. denied sub nom. Shew v. Malloy, 136 S. Ct. 2486 (2016); Friedman v. Highland Park, 784 F.3d 406, 412 (7th Cir. 2015), cert. denied, 136 S. Ct. 447 (2015).

The defendant's claims that the Commonwealth's firearms statutes violate the Second Amendment and art. 17 on vagueness grounds, or because they deprive citizens of their right to bear arms, therefore fail.

<u>Judgments affirmed</u>.

<u>Appendix</u>.


<u>Model Jury Instruction Regarding Unlawful Possession of Large
Capacity Weapons and/or Feeding Devices</u>

     The defendant is charged with unlawfully possessing a large
capacity (weapon) (feeding device).

     In order to prove the defendant guilty of this offense, the
Commonwealth must prove four elements beyond a reasonable doubt:

     <u>First</u>:  That the defendant possessed an item;

     <u>Second</u>:  That the item meets the legal definition of "large
capacity (weapon) (feeding device)";

     <u>Third</u>:  That the defendant knew that (he) (she) possessed
that (weapon) (feeding device); and

     <u>Fourth</u>:  That the defendant knew that the (weapon) (feeding
device) met the legal definition of a large capacity (weapon)
(feeding device) or was capable of holding more than ten rounds
of ammunition.

     To prove the first element, the Commonwealth must prove
beyond a reasonable doubt that the defendant possessed the
(firearm) (feeding device).  A person "possesses" something if
(he) (she) has direct physical control or custody of it at a
given time.

     To prove the second element, the Commonwealth must prove
beyond a reasonable doubt that the item in question met the
legal definition of a large capacity (weapon) (feeding device).
(A large capacity weapon is defined in our law as any firearm,
rifle, or shotgun that is semiautomatic and has a fixed large
capacity feeding device or is capable of accepting, or readily
modifiable to accept, any detachable large capacity feeding
device, or any firearm, rifle, or shotgun that employs a
rotating cylinder capable of accepting more than ten rounds of
ammunition or more than five shotgun shells.)  (A large capacity
feeding device is defined in our law as a fixed or detachable
magazine, box, drum, feed strip, or similar device capable of
accepting, or that can be readily converted to accept, more than
ten rounds of ammunition or more than five shotgun shells.)

To prove the third element, the Commonwealth must prove beyond a reasonable doubt that the defendant knew that (he) (she) was in possession of a (weapon) (feeding device).

To prove the fourth element, the Commonwealth must prove beyond a reasonable doubt either that the defendant knew that that the (weapon) (feeding device) met the legal definition of "large capacity" or that the defendant knew that the (weapon) (feeding device) was capable of accepting, or readily modifiable to accept, more than ten rounds of ammunition or more than five shotgun shells.

This requires you to make a decision about the defendant's state of mind at the time of the alleged unlawful possession of a large capacity (weapon) (feeding device).  You may examine the defendant's actions and words, and all of the surrounding circumstances, to help you determine the extent of the defendant's knowledge.