APPEALS COURT 
 
 COMMONWEALTH vs. JOSE M. SHAW

 
 Docket:
 24-P-864
 
 
 Dates:
 April 3, 2025 – July 23, 2025
 
 
 Present:
 Massing, Englander, & D'Angelo, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Firearms. Evidence, Authentication, Court record, Prior conviction. Statute, Construction. License. Practice, Criminal, Argument by prosecutor, Presumptions and burden of proof.
 
 

  
      Indictments found and returned in the Superior Court Department on January 13, 2023. 
      The cases were tried before William F. Sullivan, J.
      Haylie Jacobson, Committee for Public Counsel Services, for the defendant.
      Arne Hantson, Assistant District Attorney, for the Commonwealth.
      D'ANGELO, J.  Following a jury trial in the Superior Court, the defendant, Jose M. Shaw, was convicted of several firearm-related offenses and negligent operation of a motor vehicle.[1]  The defendant then elected a jury-waived trial on three sentence enhancement charges, one for being a second-time firearm offender and two for previously having been convicted of two violent crimes or serious drug offenses.[2]  The defendant raises several issues on appeal, the first of which is that the judge erred in admitting records of his prior conviction of a serious drug offense because the records lacked adequate authentication.  The defendant also asserts that his convictions for unlawfully possessing a firearm and unlawfully possessing a loaded firearm should be reversed because the Commonwealth failed to prove beyond a reasonable doubt that the defendant knew he was required to have a license to carry a firearm.  Finally, the defendant maintains that he was prejudiced by the Commonwealth's closing argument, asserting that it impermissibly shifted the burden of proof.  We discern no prejudicial error and thus affirm.
      Background.  We briefly summarize the facts in the "light most favorable to the [Commonwealth]" (citation omitted), Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), reserving certain details for later discussion.  On August 21, 2022, at around 12:30 A.M., several Brockton police officers were dispatched to Main Street following reports of "someone shooting in the air on the sidewalk."  On arrival, one officer noticed a dark-colored motorcycle driving away from the scene.  The officers located seven spent .40 caliber shell casings spread along the sidewalk.
      Later, just before 2 A.M., the officers were dispatched to the same area in search of a male suspect later identified as the defendant.[3]  An officer noticed a motorcycle parked by the entrance of a parking lot next to a bar and believed it was the same motorcycle that he had seen earlier.  He entered that parking lot and attempted to block the entrance, but the defendant was able to go around him and quickly fled on his motorcycle.  Another officer pursued the defendant in a marked cruiser with the emergency lights on.  Several blocks into the pursuit, the motorcycle braked, turned, and fell over, at which point the defendant ran away on foot.  The officer got out of his cruiser and chased the defendant for approximately twenty feet until the defendant surrendered.  Several officers retraced the path that the officer and the defendant had taken and, using flashlights, identified a .40 caliber firearm along the path.  As noted, a jury found the defendant guilty of the charges arising from these facts.
      During the subsequent bench trial, the judge admitted a nine-page document that the prosecutor described as a "certified court docket."  The exhibit stated that in 2001, the defendant was convicted of possession of a class B controlled substance with intent to distribute, in violation of G. L. c. 94C, § 32A (a), and committing that crime within 1,000 feet of a school or within one hundred feet of a public park, in violation of G. L. c. 94C, § 32J.  Each page of the nine-page exhibit was embossed with a seal of the Brockton District Court and the first five pages were signed by the clerk-magistrate.  The defendant did not object to the exhibit's admission.  An officer identified the defendant in the courtroom and testified to arresting him in 2001 after observing him conduct alleged narcotics transactions.  That officer also identified the defendant as the person he arrested in 2001 by stating the defendant's name and address.  Based on this evidence, the judge found the defendant previously had been convicted of a "serious drug offense," and was therefore subject to a sentence enhancement under G. L. c. 269, § 10G (a).  The defendant appealed.
      Discussion.  1.  Authentication.  The defendant argues that the § 10G (a) sentence enhancement should be vacated because the nine-page exhibit was the only evidence of his prior drug offense, and it was not properly admitted at trial.[4]  Specifically, he contends that the exhibit "lacked any form of attestation," such as the words "true copy attest" and thus, it was not properly authenticated.[5]
      "[A]uthentication of a copy of an official record requires that the officer in charge of keeping the original record 'attest' to the authenticity of the copy."  Commonwealth v. Deramo, 436 Mass. 40, 47 (2002).  See Mass. R. Crim. P. 40 (a) (1), 378 Mass. 917 (1979); G. L. c. 233, § 76.  "[A]n 'attested' copy of a document is one which has been examined and compared with the original, with a certificate or memorandum of its correctness, signed by the persons who have examined it" (citation omitted).  Deramo, supra.  Attestation provides assurance "by the certifier that the copy submitted is accurate and genuine as compared to the original" (citation omitted).  Id.  Pursuant to rule 40 (a) (1), for instance, "the officer having legal custody of the record, or . . . [the officer's] deputy" certifies that the record submitted is accurate.  See G. L. c. 233, § 76 (officer "who has charge of" copies of records "in any department of the [C]ommonwealth or of any city or town" must attest to authenticity).
      Importantly, the Supreme Judicial Court has yet to "elaborate on the requirements of the actual mark of attestation, other than to note that it must be a 'written and signed certification that it is a correct copy.'"  Commonwealth v. Martinez-Guzman, 76 Mass. App. Ct. 167, 171 (2010), quoting Deramo, 436 Mass. at 47.  As a result, when reviewing official records for proper attestation, we have focused "on the purpose and requirements of the substantive component of an attestation, not on the particulars of the signature itself."  Martinez-Guzman, supra at 171.  Today, we clarify that a document has been properly "attested" when the certifier of the official record affirms -- using both (1) their signature, whether it be by hand, by stamp, or an equivalent, and (2) some other form of assurance, whether it be an embossed seal, the words "true copy attest," or an equivalent -- that the copy of the official record is a genuine and true copy of the original.[6]  See Black's Law Dictionary (12th ed. 2024) (defining "attest" as "[t]o affirm to be true or genuine").  See also Finnegan v. Lucy, 157 Mass. 439, 443 (1892) ("Signing does not necessarily mean a written signature, as distinguished from a signature by mark, by print, by stamp, or by the hand of another").
      In this case, each page of the exhibit was embossed with a seal of the Brockton District Court.  The first five pages were also signed by the Brockton District Court clerk-magistrate.  However, for unexplained reasons, pages six through nine do not contain a signature by the clerk-magistrate.  In reviewing whether the exhibit was properly attested, we strive to ensure that the substantive purpose of attestation has been met.  See Martinez-Guzman, 76 Mass. App. Ct. at 170, quoting Commonwealth v. Johnson, 32 Mass. App. Ct. 355, 357 (1992) ("a signature may be affixed in many different ways[;] [i]t may be written by hand or it may be stamped, printed, or affixed by other means").
      Based on the record before us, because there is no signature on pages six through nine of the exhibit, we cannot be certain that the clerk-magistrate is the person who embossed the seal on those pages.  Accordingly, pages six through nine of the exhibit were not properly attested because they bore only a seal.  Whereas in Martinez-Guzman, 76 Mass. App. Ct. at 171, the stamped signature on a certificate from the registrar was adequate for attestation purposes, here, the seal alone is not adequate because it does not indicate who attested to the accuracy of pages six through nine.  In contrast, pages one through five were properly attested because they bore the clerk-magistrate's signature and a seal of the court.  The combination of the signature and seal signals that the clerk-magistrate reviewed the official record against the copy and confirmed that the copy was true and accurate.  The lack of the phrase "true copy attest" is not fatal as to the first five pages where, as here, the signature is accompanied by the seal.  However, because the exhibit was not fully attested, under the circumstances here, the exhibit should not have been admitted in its entirety.[7] 
      Because the defendant did not object to the introduction of the exhibit, we review for error amounting to a substantial risk of a miscarriage of justice.  See Commonwealth v. Almele, 474 Mass. 1017, 1018 (2016).  "The substantial risk standard requires us to determine if we have a serious doubt whether the result of the trial might have been different had the error not been made" (quotation and citation omitted).  Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).  The defendant asserts that the exhibit had a "material influence on the verdict" because it was the only evidence of the defendant's prior conviction.[8]  We do not agree.  Page one of the exhibit, which we conclude was properly authenticated, proves that the defendant was convicted of possession with intent to distribute a class B controlled substance on September 6, 2002.  This, along with the defendant's identity, which was not contested, is sufficient evidence to conclude that the defendant had previously been convicted of a drug offense and was therefore subject to a sentence enhancement under G. L. c. 269, § 10G (a).[9]  We discern no substantial risk of a miscarriage of justice.
      2.  Knowledge of licensure requirement.  We next turn to the defendant's argument, made for the first time on appeal, that it was the Commonwealth's burden to prove not only that the defendant did not have a license to carry, but also that he knew that the law required him to have one.[10]  Specifically, the defendant contends that G. L. c. 269, § 10 (a), requires the element of knowledge of the law because of statutory construction principles and because of a defendant's constitutional rights to bear arms and due process.  We conclude that the Commonwealth is required to prove only that a defendant possessed a firearm without a license; it is not required to prove a defendant knows that the law requires him to have a license to carry.
       We begin by reviewing the language of § 10 (a).  "We generally construe statutes 'in a manner that is consistent with ordinary English usage.'"  Commonwealth v. Russo, 494 Mass. 356, 364 (2024), quoting Commonwealth v. Cassidy, 479 Mass. 527, 534, cert. denied, 586 U.S. 876 (2018).  "Words and phrases shall be construed according to the common and approved usage of the language" (citation omitted).  Commonwealth v. Scott, 464 Mass. 355, 358 (2013).  As relevant here, § 10 (a) applies to,
"Whoever, except as provided or exempted by statute, knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded, as defined in [G. L. c. 140, § 121] without either:
"(1) being present in or on his residence or place of business; or
"(2) having in effect a license to carry firearms issued under [G. L. c. 140, § 131]; or
"(3) having in effect a license to carry firearms issued under [G. L. c. 140, § 131F]; or
"(4) having complied with the provisions of [G. L. c. 140, §§ 129C and 131G]; or
"(5) having complied as to possession of an air rifle or BB gun with the requirements imposed by [G. L. c. 269, § 12B]."  (Emphasis added).
      "In its ordinary usage, the adverb 'knowingly' modifies [the] verbs within the clause," Commonwealth v. Daley, 463 Mass. 620, 624 (2012), and "likewise modifies the object of the verb and phrases which limit that object."  Russo, 494 Mass. at 364.  In applying these principles to § 10 (a), "knowingly" modifies the verb phrases "has in his possession" and "under his control," as well as the object of those verbs, "a firearm."  See Russo, supra.  See also Cassidy, 479 Mass. at 534-536 ("knowingly" modifies "has in his possession" and object of verb, "large capacity weapon" in G. L. c. 269, § 10 [m], which states, "[a]ny person not exempted by statute who knowingly has in his possession, or knowingly has under his control in a vehicle, a large capacity weapon").  That is the extent of the application of "knowingly"; the five items listed following the phrase "without either" and the colon are not modified by "knowingly."  There is a separation between the listed five items and the phrases that precede it regarding knowledge of possession or control of the firearm.  See Russo, supra at 363 (statute's final clause "stands out for its inclusion of the heightened mental state of 'knowingly'").  As such, the adverb "knowingly" in § 10 (a) modifies only the first part of the section.
      To illustrate this point, we look to a statute with a slightly different structure, G. L. c. 272, § 29C, which was addressed in Commonwealth v. Crayton, 470 Mass. 228 (2014).  The statute states, 
"Whoever knowingly purchases or possesses a negative, slide, book . . . of any child whom the person knows or reasonably should know to be under the age of [eighteen] years of age and such child is: 
"(i) actually or by stimulation engaged in any act of sexual intercourse with any person or animal; [or]
. . .
"(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition."  (Emphasis added).
In § 29C, the adverb "knowingly" (or a variation of it) was placed to modify not only "purchases or possesses," but also the child's age and depiction of the child.  The Legislature placed the phrase "and such child is" so that it is modified by "knows or reasonably should know" including the seven item list following it.  As such, § 29C requires a determination that a defendant (1) "knowingly and intentionally possessed visual material," (2) "knew or reasonably should have known the person depicted in such visual material was under the age of eighteen," and (3) "[knew] of the nature and content of such visual material."  Crayton, supra at 250.
      The structure of § 10 (a) differs from that of § 29C in that it lacks any explicit connector --such as "and" or similar language -- linking "knowingly" to the phrase "without either," leaving no clear indication that "knowingly" modifies each item in the list.  We further note that the Legislature added the word "knowingly" to § 10 (a) in 1990.  See St. 1990, c. 522, § 2; Commonwealth v. Marrero, 484 Mass. 341, 344 (2020).  If the Legislature had intended for "knowingly" to modify the five item list, it would have constructed the statute similarly to that of § 29C, using language that clearly applies "knowingly" to the entire list.  See Commonwealth v. Montalvo, 50 Mass. App. Ct. 85, 88 (2000) ("When the Legislature has wanted scienter about age to be an element of the offense, it has said so expressly").
      In further support of our conclusion, we next turn to the Supreme Judicial Court's recent decision, Commonwealth v. Guardado, 491 Mass. 666 (Guardado I), S.C., 493 Mass. 1 (2023), cert denied, 144 S. Ct. 2683 (2024).  There, the Supreme Judicial Court reconsidered the § 10 (a) licensure requirement in light of the United States Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022) (Bruen).  Guardado I, supra at 667-668.  Considering the impact of Bruen, the Supreme Judicial Court clarified that "the absence of a license is an essential element of the offense of unlawful possession of a firearm pursuant to G. L. c. 269, § 10 (a)," and as such, "the Commonwealth must prove 'as an element of the crime charged' that the defendant in fact failed to comply with the licensure requirements for possessing a firearm."  Guardado I, supra at 690, quoting Commonwealth v. Munoz, 384 Mass. 503, 507 (1981).  Although it specifically considered the effect of Bruen on the same language in § 10 (a) on which the defendant here focuses, the Supreme Judicial Court did not, as the defendant argues, conclude that Bruen mandated a mens rea requirement with respect to that provision.[11]
      The defendant seeks relief because he claims that he did not know failure to have a license to carry a firearm was criminal conduct.  A defendant's ignorance of the law is no excuse.  Unless specified otherwise, the use of the word "knowingly" in a criminal statute pertains to a defendant's knowledge of the facts, not knowledge of the conduct's criminality.  See Bryan v. United States, 524 U.S. 184, 193 (1998) ("unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense"); Commonwealth v. O'Connell, 432 Mass. 657, 663-664 (2000) (implicitly requiring defendant to have knowledge of possession of firearm, but not knowledge of characteristics that made it illegal, such as its dimensions, to convict pursuant to § 10 [c]). 
      As applicable to § 10 (a), the Commonwealth was required to prove that the defendant did not have a license to carry; it did not need to prove that the defendant knew his lack of a license to carry was illegal or that he was required to have a license to carry.  Here, the Commonwealth met its burden.  The Commonwealth proffered sufficient evidence to support the finding that the defendant did not have a license to carry.[12]
      3.  The prosecutor's closing argument.  Finally, the defendant asserts that the prosecutor impermissibly shifted the burden of proof by suggesting that the defendant should have provided evidence that he had a license to carry.  During closing argument, the prosecutor referenced the officers' earlier testimony that they asked for the defendant's license to carry and the defendant responded, "What is that?"  The prosecutor went on, 
"Ladies and gentlemen, [the defendant] said what is that 'cause he didn't have a firearms license.  The defendant knew that.  That's why he said that.  Don't you think he would have said he had one or used to have one or something else?  He didn't because he never had a firearms license."
The defendant objected, asserting that it is "the Commonwealth's burden to disprove that [the defendant] had a license" and maintained that he did not "need to present any evidence."  "Because the defendant objected to the argument at trial, we review for prejudicial error."  Commonwealth v. Andrade, 468 Mass. 543, 551 (2014).
      "We consider remarks made during closing in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury" (quotation and citation omitted).  Commonwealth v. Andre, 484 Mass. 403, 417-418 (2020). 
A prosecutor is "entitled to point out the weaknesses of the defendant's case," Commonwealth v. Fernandes, 478 Mass. 725, 741 (2018), and "make a fair reply to the defendant's closing argument."  Commonwealth v. Smith, 404 Mass. 1, 7 (1989).  In doing so, "a prosecutor may argue forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence" (quotation and citation omitted).  Fernandes, supra.  However, "a prosecutor . . . cannot make statements that shift the burden of proof from the Commonwealth to the defendant" (quotation and citation omitted).  Commonwealth v. Johnson, 463 Mass. 95, 112 (2012).
      The prosecutor's statements during closing were not improper burden shifting; rather, they were in response to the defendant's closing argument and the evidence that he presented.  During closing, defense counsel stated, "[the defendant] responds to [the officers], what is that?  I mean, that's the big answer, what is that?  It's not yes, it's not no.  I mean, it's what is that?"[13]  The prosecutor's comments were a fair reply to the inferences created by defendant's closing.  See Commonwealth v. DeJesus, 17 Mass. App. Ct. 1020, 1021-1022 (1984).  Regardless, the judge's instruction adequately cured any potential for harm when he instructed the jury that the burden is on the Commonwealth and "[t]he burden never shifts."  See Commonwealth v. Cohen, 412 Mass. 375, 382-383 (1992).  We presume that the jurors followed the judge's clear instructions.  See Andre, 484 Mass. at 418.
 
 
 
      Judgments affirmed.
footnotes

          [1] Specifically, the defendant was convicted of carrying a firearm without a license, G. L. c. 269, § 10 (a); carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); possession of ammunition without a firearm identification (FID) card, G. L. c. 269, § 10 (h) (1); discharging a firearm within 500 feet of a building, G. L. c. 269, § 12E; and negligent operation of a motor vehicle, G. L. c. 90, § 24 (2) (a).  The trial judge later dismissed the conviction of possession of ammunition without an FID card as duplicative.
               [2] After the bench trial, the defendant was convicted of all three sentence enhancement charges.  Under G. L. c. 269, § 10 (d), the judge found that the defendant had a prior conviction for unlawful possession of a firearm.  Under G. L. c. 269, § 10G (a), the judge found that the defendant had only one prior conviction for a violent crime or serious drug offense, rather than two as charged.  The judge later dismissed one of the two § 10G (a) convictions as duplicative, and the guilty finding on the § 10 (d) enhancement was placed on file at the Commonwealth's request with the defendant's consent.  The propriety of doing so is not before us.
           [3] A police dispatcher sent the officers an e-mail message containing still images of the suspect, which had been captured by the city's video surveillance system.
          [4] A certified copy of a trial court docket is an exception to the hearsay rule as an official or public record or a business record.  See Mass. G. Evid. § 803(8)(A) (2025).  See also Commonwealth v. Weeks, 77 Mass. App. Ct. 1, 4 (2010).
               [5] The defendant's comparison to Commonwealth v. Babcock, 100 Mass. App. Ct. 527 (2021), is inapposite.  In Babcock, the defendant took issue with the lack of authentication on official records of a prior out-of-state conviction.  Id. at 527-528.  Therefore, we applied the pertinent part of Mass. R. Crim. P. 40 (a) (1), 378 Mass. 917 (1979), which "require[s] the 'double certification' of attestation by the custodian and certification that such custodial officer is in fact the custodian."  Babcock, supra at 528.  Here, where the "official record [is] kept within the Commonwealth," no such double certification requirement applies.  See Mass. R. Crim. P. 40 (a) (1).
          [6] We take this opportunity to note that the best practice for submitting official records kept within the Commonwealth, pursuant to rule 40 (a) (1), is to include a certification page that precedes the official record and describes the attached document, including its nature, how it was reviewed for accuracy against the original, and the number of pages.  That certification should also contain the certifier's signature and an additional form of assurance, as described above.
      [7] While it appears that all nine pages of the exhibit were previously stapled together, the record provided no indication whether the lack of a signature on pages six through nine was inadvertent or intentional.
               [8] The defendant acknowledges that an officer testified that he arrested the defendant in 2001; however, the defendant contends that the officer never testified to charging or convicting the defendant of any offense.
               [9] Further, the record is devoid of any evidence suggesting that the exhibit was not a true and accurate copy of the court docket or that the exhibit was fabricated or manipulated.
               [10] We accordingly review this issue for a substantial risk of a miscarriage of justice.  See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 794-795 (2019).
           [11] The Supreme Judicial Court is no stranger to clarifying the mens rea requirement in sections of G. L. c. 269.  See Cassidy, 479 Mass. at 529 ("We conclude that, to sustain a conviction under G. L. c. 269, § 10 [m], the Commonwealth must prove that a defendant either knew the firearm or feeding device met the legal definition of 'large capacity' or knew it was capable of holding more than ten rounds of ammunition"); Commonwealth v. Brown, 479 Mass. 600, 601 (2018) ("We conclude that, to sustain a conviction under G. L. c. 269, § 10 [n], the Commonwealth must prove that a defendant knew the firearm he or she possessed was loaded").  The Supreme Judicial Court has never found that the word "knowingly" applies to the licensure requirement in § 10 (a).
               [12] The defendant also suggests that it is unconstitutional -- a violation of the Second Amendment and the due process clauses of the United States Constitution -- for the Commonwealth to hold him criminally responsible for possession of a firearm without a license unless the Commonwealth shows that the defendant knew he was required to have a license.  Put differently, the argument is that the Commonwealth cannot define this state law crime without including the defendant's knowledge of the law as an element.  This argument was not made in the trial court.  Moreover, the briefing on appeal consists of a single page; the defendant cites no cases that have even addressed, let alone accepted, his novel constitutional theory.  The defendant's presentation on this issue does not rise to the level of reasoned appellate argument, and we do not address it.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019); Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011), quoting Zora v. State Ethics Comm'n, 415 Mass. 640, 642 n.3 (1993) ("Briefs that limit themselves to 'bald assertions of error' that 'lack[] legal argument . . . [do not] rise[] to the level of appellate argument' required by rule 16").
          [13] The question, "What is that?" was in reference to the officers' demand for the defendant's firearms license.